## WILLIAM J. MELLENTHIN v. PETER J. BRANTMAN AND OTHERS.
## CHRISTUS GERMAN EVANGELICAL LUTHERAN CHURCH OF MARSHALL, INTERVENER.[1]

December 5, 1941.

No. 33,022.

*Hall, Catlin & Gold,* for defendant-appellants.

*E. V. Molle,* for intervener-appellant.

*Z. L. Begin,* for respondent.

[1]Reported in 1 N. W. (2d) 141.

JULIUS J. OLSON, JUSTICE.

Plaintiff's action in ejectment resulted in findings favorable to him. From the judgment entered in conformity therewith, defendants and intervener appeal. We shall refer to the parties as below except that intervener will be referred to as the "church."

The church was the owner of a tract of land in Marshall, later platted as Auditor's Plat No. 6. This tract had a frontage of 151 feet on Fourth street. The lots therein extend northwesterly from Fourth street, but for practical purposes we may as well refer to compass directions. Immediately to the east is block 3 of Addition A. The lots there are 66 feet wide, 189 feet in length, and extend from Fourth street to an alley. The church property, however, as platted, showed no alley. In 1921 the church authorities concluded that a portion of its property should be disposed of to help reduce its obligations and also to silence a rumor that if its property exceeded an acre in area such excess would be subject to taxation. Accordingly, appropriate resolutions were passed granting to the trustees of the church authority and directions to make effective these purposes. The pastor actively took the matter in hand. Real efforts were made to dispose of the portion sought to be sold. The church lots ran back to their northerly line, the longest being something over 300 feet. The mother of plaintiff, his predecessor in title and interest, concluded to buy lot 4, but she did not wish her property to extend beyond the alley line in block 3. She told the pastor that what she wanted was a lot of the same size as Mrs. Gaffney's, lying to the east in block 3. The church property was then all fenced. A deal was made whereby Mrs. Mellenthin paid $1,000 for the desired lot. In her contract for its purchase and the deed later given, the lot was described by metes and bounds. Apparently no one knew the number of feet required to bring the area intended to be conveyed to the alley line if and as extended. The contract for deed and the deed described only an area of 66 feet fronting on Fourth street and extending back 132 feet. But the church authorities moved the fence to the north and in line with the

alley in block 3, all as contemplated by the parties. This was in 1921. Mrs. Mellenthin entered into possession and used the entire area, which all parties in interest, ever since by common consent, have treated as the property conveyed. Buildings were erected and other improvements made. The rear portion, here in dispute, was used as a garden, with trees planted along the northerly fence line. Thus the property has been continuously used and occupied until 1939. Then, for the first time, 18 years after Mrs. Mellenthin entered into possession, it was found that the northerly portion of the premises extended beyond the area described in the contract and deed. Later, the church conveyed this portion to defendants Brantman, who took possession of the disputed area. This action promptly followed.

Mrs. Mellenthin died in October 1929. Plaintiff purchased the interests of the other heirs, thereby succeeding to all the right, title, and interest formerly possessed by his mother. The court found that "at all times after purchasing said land, Anna C. Mellenthin and her successors in interest * * * honestly believed" that the contract and deed "transferred and conveyed * * * all of the premises described in the plaintiff's complaint"; that the possession of Mrs. Mellenthin and her successors in interest was and continued to be "full, open and notorious * * * under a claim of right of ownership"; that neither the church nor any of its members "disturbed * * * said possession" from the time of original purchase until 1939, "when it was discovered by someone that said contract for deed, * * * and the warranty deed, * * * did not describe all of said premises but only a part thereof." As conclusions of law, the court directed judgment "that the plaintiff is the owner in fee" of the premises and that he recover damages in the amount of $30 as for defendants' trespass, with costs and disbursements.

For reversal, appellants' position is thus summarized:

"It is undisputed that plaintiff and his ancestor continuously possessed and used the disputed tract from September 1921, until

September 1939 under a mutual mistake of fact, and that during said period the title and right of possession was never disputed between the parties." The "mutual mistake of fact" has for its basis the claim that plaintiff "never realized that he was in possession of more than 132 feet until the land was measured in September 1939 * * * and neither plaintiff nor his mother ever intended to claim any part of the property belonging to the church." And further: "We do not contend that the presence of mistake alone would defeat plaintiff's claim; *but we do maintain that the absence of adverse intent does.* * * * It is true as stated by the Court in the memorandum that neither good faith or [nor] color of title are [is] required to establish title by adverse possession; but the cases cited by the Court sustain our contention that *adverse intent* must accompany possession; and such adverse intent is usually manifested by disputes and conflicts with the true owner during the period of limitation." (Italics supplied.)

■ The statute (Mason St. 1927, § 9187) provides:

"No action for the recovery of real estate, or the possession thereof, shall be maintained unless it appears that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question within fifteen (15) years before the beginning of the action."

In Seymour, Sabin & Co. v. Carli, 31 Minn. 81, 16 N. W. 495, the point here relied upon by appellants was there the decisive one. There, too, the record owner contended that he had never been disseized, since defendant's possession resulted from his mistake as to the true location of the boundary between the lot owned by him and the one adjoining it; hence that intent to hold adversely was lacking. But the court in holding against him said (31 Minn. 83, 84, 16 N. W. 495):

"The title of the owner of a freehold estate is described by the terms 'seizin,' or 'seizin in fee;' yet, in a proper legal sense, the holder of the legal title is not seized until he is fully invested

with the possession, actual or constructive. When there is no adverse possession, the title draws to it the possession. There can be but one actual seizin, and this necessarily includes possession; and hence an actual possession in hostility to the true owner works a disseizin, and, if the disseizor is suffered to remain continuously in possession for the statutory period, the remedy of the former is extinguished. * * * They [defendant or his grantors] took possession of the land in question as a part of lot 1, and intended to claim it as their own, though they were mistaken as to the boundary. The object of the statute is to quiet titles and end disputes. If the plaintiffs have a cause of action in ejectment, there would seem to be no good reason why the statute should not run against it, as in other cases where the possession of land is withheld." Therefore, said the court (31 Minn. 85, 16 N. W. 496) : "Upon the facts in this case, we conclude that the actual, exclusive possession of the defendant and his grantors must, to the extent of their occupancy, be deemed adverse, whether the original entry and possession thereunder were by mistake or not."

So in Kelley v. Green, 142 Minn. 82, 86, 170 N. W. 922, 923, a case similar in its controlling facts to those here presented, in that there also the respondent and his predecessors in title had mistakenly occupied a greater area than that within the true line, the holding in the Carli case was reaffirmed and the applicable rule restated as follows:

"Where one of two adjoining owners takes and holds actual possession of land beyond the boundary of his own lot or tract, under a claim of title thereto as being a part of his own land, though under a mistake as to the location of the boundary line, such possession, for the purposes of the statute, is to be deemed adverse to the true owner and a disseizin."

To the same effect is Fredericksen v. Henke, 167 Minn. 356, 209 N. W. 257, 258, 259, 46 A. L. R. 785, where the court held (167 Minn. 359) :

"To constitute adverse possession it is not essential that the adverse possessor actually live upon the land which he claims. It is enough that it is occupied and applied to the uses for which it is fit." There, too, (p. 360) "the boundary claimed by the plaintiff and his predecessors was a mistaken boundary," but since his possession was "under a claim of title, his occupancy is a disseisin and his possession adverse though initiated and continued by mistake."

Our prior cases are there cited and need not again be cited here.

■ The record leaves no doubt that, as stated by the trial judge, "If there was any mistake," it related only "to the description in the deed." He could find no "dispute on this issue whatsoever." All concerned "thought that she [Mrs. Mellenthin] was getting the land to the fence." In that situation, plaintiff's possession and that of his mother before him was in fact and law "adverse" within the meaning of our statute and a disseizin of the record title owner.

■ It is next contended that, since plaintiff did not pay any taxes upon the disputed area, § 9187 bars his right of recovery. In making this claim appellants wholly ignore or overlook that part of the statute which reads:

"Providing, further, that the provisions of the foregoing proviso [relating to payment of taxes] shall not apply to actions relating to the boundary line of lands, which boundary lines are established by adverse possession, or to actions concerning lands included between the government or platted line and the line established by such adverse possession, or to lands not assessed for taxation."

Our cases have given that proviso full support. Kelley v. Green, 142 Minn. 82, 85, 170 N. W. 922; Fredericksen v. Henke, 167 Minn. 356, 360, 361, 209 N. W. 257, 46 A. L. R. 785; Riley v. Kump, 170 Minn. 58, 59, 212 N. W. 13; Skala v. Lindbeck, 171 Minn. 410, 413, 414, 214 N. W. 271.

Judgment affirmed.

342

MR. JUSTICE STONE took no part in the consideration or decision of this case.