# FAYETTE EHLE AND OTHERS v. MARGARET K. PROSSER AND ANOTHER.

197 N. W. 2d 458.

May 5, 1972—No. 43138.

*William A. Lindquist,* for appellants.

*Peterson, Challeen, Delano & Thompson* and *Dennis A. Challeen,* for respondents.

Heard before Knutson, C. J., and Otis, Rogosheske, and Todd, JJ.

TODD, JUSTICE.

Plaintiffs appeal from a judgment of the District Court of Winona County denying their claims to certain disputed property by reason of adverse possession or establishment of boundary lines as provided by our statutes. Plaintiffs challenge the trial court's holding that payment of real estate taxes for 5 years is an absolute prerequisite in all cases for establishing title by adverse possession. The evidence supports the claim of plaintiffs to title to the disputed property, and the decision of the trial court is reversed.

Plaintiffs Kay Ehle Kobus and James Ehle are the fee owners, subject to a life estate in plaintiff Fayette Ehle, of the following described property situated in Winona County, Minnesota:

"Commencing at a point where the meander line of the Mississippi River would intersect the easterly line of Monroe Street in the Village of Homer, Winona County, Minnesota, if the same were extended northerly; thence southerly along said extension and along the westerly line of Block 22 to the northerly line of Ann Street; thence easterly along the northerly line of said Ann Street to the easterly line of Lot 5, Block 22; thence northerly along said easterly line of said Lot 5, in a direct line north to said meander line of said Mississippi River; thence westerly along said meander line of said Mississippi River to the place of beginning, excepting the right of way of the Chicago, Milwaukee & St. Paul Railway Company.

"Also conveying a strip of land 33 feet wide extending from the north line of said Chicago, Milwaukee & St. Paul Railway Company's right of way to the Mississippi River, the east bound-

ary of said strip of land being the east line of Monroe Street produced to said river, together with the perpetual right to cross Lots One, Two, Three and Four (1, 2, 3 & 4) in said Block No. 22 in said Village of Homer."

Defendants, brother and sister, are the record owners of the following described property adjacent to the above-described property:

"Commencing at a point where the meander line of the Mississippi River would intersect the westerly line of Lot 4 in Block 22 in the Village of Homer, if said westerly line of said Lot 4 were extended northerly in a straight line to the Mississippi River, thence southerly along the extension of said westerly line of Lot 4 to the northerly line of Ann Street, which point is also the southwesterly corner of said Lot 4, thence easterly along the northerly line of Ann Street to the easterly line of Lot 3 in Block 22, thence northerly along the easterly line of said Lot 3 to the northeast corner of said Lot 3, thence continuing in a straight line northerly along what would be the extension of the easterly line of said Lot 3 if the same were extended northerly, in a straight line to the Mississippi River, thence westerly along the meander line of said Mississippi River to the place of beginning, excepting the right of way of the Chicago, Milwaukee, St. Paul and Pacific Railway Company. Also a perpetual right to cross Lots 1 and 2 in Block 22 of said Village of Homer."

Plaintiffs acquired title to their property under a probate decree in the estate of Mayda O. Roesner on September 25, 1968. Mrs. Roesner acquired title on May 31, 1957, from the estate of her husband, Louis G. Roesner, who acquired title to the property by deed dated June 30, 1920.

Defendants acquired title to their property by probate deed from the estate of Theodore Heck dated September 3, 1948. Theodore Heck, Alfred Meier, and Otto Weibel owned both properties prior to the conveyance in 1920 to Louis Roesner. Theodore Heck

subsequently acquired the interest of Meier and Weibel on December 17, 1942.

Louis Roesner built a year-round home on his property in 1928. In 1936 Mr. Roesner married Mayda Ehle, the mother of plaintiff Fayette Ehle. At this time Mr. Roesner made substantial improvements to his property and to a portion of Lot 4 of the above-described property of the defendants lying easterly of the property of which Roesner was record owner. The disputed property consists of the westerly 37 feet of the defendants' property, the parties having stipulated to the location of the common boundary line between Lots 4 and 5 following a survey of plaintiffs' property.

In 1936 when Mr. Roesner made improvements to his home, he also landscaped his yard, including the disputed area. He established a parking area on the easterly edge of the disputed area; constructed a stone walkway from that parking area to his home; placed two stone monuments at the beginning of the stone walkway; placed, and planted flowers in, a 3-foot urn just south of the above monuments; erected clothes poles near the easterly edge of the disputed area, constructing a walkway from the clothes pole area to his home; planted three sets of hedges, two parallel with the clothes pole area and one near the parking area; planted grass in the disputed area; and maintained the area.

Sometime thereafter, Mayda Roesner had a tree removed in the disputed area, and there appeared on one of the trees in the disputed area a sign placed there by Mr. Roesner, saying "Private—Keep Out." There is no evidence that the defendants or their predecessors in interest in any way objected or asserted any claim to the disputed property prior to 1966, at which time defendants asserted ownership. The dispute arising therefrom led to this litigation.

Defendants claim that they were aware of the true location of the property line at the time of their acquisition of title in 1948, but admit that they never communicated this alleged

knowledge to the plaintiffs or any of their predecessors in title. There is some evidence that the defendants on occasions used the clothes poles and the parking area, but there is no evidence that this use was under a claim of ownership. Further, it appears that defendant Margaret Prosser in 1965 removed one of the hedges planted on the easterly side of the clothes pole area and adjacent to the disputed boundary line because the hedge had suffered damage in the 1965 flood, but she admitted that she caused this removal to be made for esthetic reasons and not by reason of any claim of ownership.

The parcels of real estate of the plaintiffs and the defendants were separately assessed and taxed. There was no separate assessment or taxation of the 37-foot strip of disputed property. There is no evidence that either the plaintiffs or the defendants intended that the roadway easement reserved in the deed of the plaintiffs' predecessors in title across Lots 3 and 4 of Block 22, Village of Homer, would be affected in any way by this litigation.

The matter was tried before the court without a jury on October 10 and 11, 1968, the Honorable Arnold Hatfield presiding. The court entered its findings in favor of the defendants on November 26, 1968, and the plaintiffs moved for amended findings or a new trial before Judge Hatfield on December 9, 1968. On September 1, 1969, without ruling on plaintiffs' motion, Judge Hatfield retired for reasons of ill health. Subsequently, by appointment of the chief judge of the judicial district, Judge Hatfield served as a retired judge from January 26, 1970, to June 30, 1970. On July 8, 1970, he entered his order correcting some typographical errors as to direction in the original order, but otherwise denying plaintiffs' motion.

Thereafter, plaintiffs moved the court, the Honorable Glenn E. Kelley presiding, for an order adjudging the amended findings of Judge Hatfield dated July 8, 1970, null and void, and asking for a rehearing of plaintiffs' original motion for amended findings or a new trial. At the same time, a supplemental motion was filed asking for amended findings or a new trial. Both mo-

tions were denied, and judgment was entered in favor of defendants on April 5, 1971, adjudging defendants the owners of the disputed land and holding that plaintiffs had no interest whatever in the property of the defendants, a determination which necessarily terminated the easement reserved in the original deed. From this judgment and the orders denying their motions for a new trial, the plaintiffs appeal.

Plaintiffs question the validity of Judge Hatfield's order of July 8, 1970, upon which the judgment is based, since his appointment as a retired judge had expired before that date. We do not reach the issue, since this case will be disposed of on other grounds.

1. The trial court in a memorandum accompanying its order of November 26, 1968, stated that the plaintiffs, in order to acquire title to land by adverse possession, must pay the taxes for 5 consecutive years on the land being acquired by adverse possession. This statement is contrary to our statutes and decisions on this subject and is in error. Minn. St. 541.02 provides:

"No action for the recovery of real estate or the possession thereof shall be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within 15 years before the beginning of the action.

"Such limitation shall not be a bar to an action for the recovery of real estate assessed as tracts or parcels separate from other real estate, unless it appears that the party claiming title by adverse possession or his ancestor, predecessor, or grantor, or all of them together, shall have paid taxes on the real estate in question at least five consecutive years of the time during which he claims these lands to have been occupied adversely.

"*The provisions of paragraph two shall not apply to actions relating to the boundary line of lands, which boundary lines are established by adverse possession,* or to actions concerning lands included between the government or platted line and the line es-

tablished by such adverse possession, *or to lands not assessed for taxation."* (Italics supplied.)

Claims relating to boundary lines of lands and claims to lands not assessed for taxation as separate tracts—both of which are presented in this case—are clearly exempt from the statutory provisions requiring the payment of taxes. Mellenthin v. Brantman, 211 Minn. 336, 1 N. W. 2d 141 (1941); Skala v. Lindbeck, 171 Minn. 410, 214 N. W. 271 (1927); Riley v. Kump, 170 Minn. 58, 212 N. W. 13 (1927); Fredericksen v. Henke, 167 Minn. 356, 209 N. W. 257, 46 A. L. R. 785 (1926); Kelley v. Green, 142 Minn. 82, 170 N. W. 922 (1919).

2. In order to establish title by adverse possession, the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time which, under our statute, is 15 years. Subjective intent to take land adversely is not essential in this state and title by adverse possession may be obtained even though the disseizor does not intend to take land not belonging to him so long as he does intend to exclude all others. Engquist v. Wirtjes, 243 Minn. 502, 504, 68 N. W. 2d 412, 415 (1955). It is sufficient that the land is occupied by mistake. Mellenthin v. Brantman, 211 Minn. 336, 341, 1 N. W. 2d 141, 143; Skala v. Lindbeck, *supra.* In Kelley v. Green, 142 Minn. 82, 86, 170 N. W. 922, 923, we quoted with approval the language of Seymour, Sabin & Co. v. Carli, 31 Minn. 81, 16 N. W. 495 (1883):

"* * * 'Where one of two adjoining owners takes and holds actual possession of land beyond the boundary of his own lot or tract, under a claim of title thereto as being a part of his own land, though under a mistake as to the location of the boundary line, such possession, for the purposes of the statute, is to be deemed adverse to the true owner and a disseizin.' "

In Cool v. Kelly, 78 Minn. 102, 104, 80 N. W. 861 (1899), this court said:

"* * * An adverse intent to oust the owner and possess for

himself may be generally evidenced by the character of the possession and the acts of ownership of the occupant. His good or bad faith in the premises is not material."

Similarly, the requirement of "hostile" possession does not refer to personal animosity or physical overt acts against the record owner of the property but to the intention of the disseizor to claim exclusive ownership as against the world and to treat the property in dispute in a manner generally associated with the ownership of similar type property in the particular area involved. Norgong v. Whitehead, 225 Minn. 379, 31 N. W. 2d 267 (1948) ; Thomas v. Mrkonich, 247 Minn. 481, 78 N. W. 2d 386 (1956) ; Skala v. Lindbeck, *supra.*

The evidence is undisputed that the possession of plaintiffs and their predecessors in title was open and actual and continuous from at least 1936 to 1966, when defendants made their first claim of ownership. The occasional use of the clothes line and the parking area by defendants and their predecessors in title was minimal in nature, and there is no evidence that it was ever made under a claim of ownership so as to defeat plaintiffs' claim that their possession of the disputed property was exclusive. Plaintiffs and their predecessors in title improved the property, maintained the property, and at all times treated it as property owned by them.

3-4. Defendants claim that the use was permissive and not adverse. The trial court found that the original use was permissive. The evidence does not sustain this finding. This court has distinguished between permissive use and acquiescence. In Dozier v. Krmpotich, 227 Minn. 503, 507, 35 N. W. 2d 696, 699 (1949), our court held:

"* * * Where the claimant of an easement by prescription has shown open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate and under circumstances from which his knowledge and acquiescence may be inferred, the use will be

presumed to be under claim of right and adverse, so as to place on the owner of the servient estate the burden of rebutting the presumption by evidence that the use was permissive. * * * It is also the rule that, where the user is permissive on the part of the owner, there can be no prescriptive right, and that, if the user was permissive in its inception, it must become adverse to the knowledge of the owner of the servient estate before any prescriptive rights can arise. * * * It must be apparent, therefore, that 'acquiescence' and 'permission' as used in this connection are not synonymous. 'Acquiescence,' regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user. 'Permission' means more than mere acquiescence; it denotes the grant of a permission in fact or a license. Naporra v. Weckwerth, 178 Minn. 203, 226 N. W. 569, 65 A. L. R. 124. See, Dartnell v. Bidwell, 115 Me. 227, 98 A. 743, 5 A. L. R. 1320; Davis v. Wilkinson, 140 Va. 672, 125 S. E. 700. The distinction between 'acquiescence' and 'permission' was pointed out in the Naporra case (178 Minn. 206, 226 N. W. 571), where we said:

" 'License or permissive use on the part of the landowner must be distinguished from mere acquiescence. The one is evidence that claimant did not have the drainage right in the absence of the permission; while the other is evidence that he did.'

"In the case of permissive use, the user is *under* the owner of the servient estate; in a case of acquiescence, it is *against* him. See, Zollinger v. Frank, 110 Utah 514, 175 P. (2d) 714, 170 A. L. R. 770."

It is clear from the evidence in this case that irrespective of whatever relationship existed between predecessor owners of the property, defendants, who owned the property from 1948 to 1966, silently permitted and thus acquiesced in the acts of ownership of plaintiffs and their predecessors in title for 18 years, a period sufficient to establish title by adverse possession

in the plaintiffs under our statute. In Minnesota adverse possession of land for the period of time prescribed by the statute of limitations not only bars the remedy but practically extinguishes the right of the party having the paper title and vests a perfect title in the adverse holder. Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060 (1893); McArthur v. Clark, 86 Minn. 165, 90 N. W. 369 (1902); Ross v. Cale, 94 Minn. 513, 103 N. W. 561 (1905); Fredericksen v. Henke, 167 Minn. 356, 209 N. W. 257, 46 A. L. R. 785 (1926); Mellenthin v. Brantman, 211 Minn. 336, 1 N. W. 2d 141 (1941).

Having concluded that plaintiffs have established title to the disputed property by adverse possession, it is not necessary to consider the evidence or cases involving establishment of a practical boundary line under Minn. St. 559.23.

There is no evidence in this case which would support the conclusion of the trial court eliminating the roadway easement reserved in the original deed to the plaintiffs' property. That conclusion is without merit.

Reversed and the judgment appealed from is vacated and the matter remanded to the trial court for issuance of amended findings of fact, conclusions of law, and order for judgment consistent with this opinion.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.