Curtis **MORKEN** and **Sharon Carlson, Personal Representatives of the Estate of Clarence S. Morken, Deceased, Respondents,**

v.

**Bennie MORKEN, et al., Appellants.**

No. C1–85–317.

Court of Appeals of Minnesota.

Oct. 29, 1985.

James D. Sinclair, Detroit Lakes, for respondents.

Thomas A. Opheim, Ada, for appellants.

Considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

This appeal is from a judgment quieting title to an 80 acre tract of farmland. The

trial court found that respondents established ownership by adverse possession. We affirm.

## FACTS

When Ole Morken died in 1928, he was the sole owner of three parcels of land. He devised all three parcels in equal shares to nine of his ten children: Clarence Morken, Richard Morken, Odd Morken, Minnie Morken, Selmer Morken, Bernie Morken, Norman Morken, Frithjof Morken and Cora Syverson. The parcel in dispute is an 80 acre tract referred to as "the 80." The second parcel is a 160 acre tract referred to as "the home quarter." This parcel is adjacent to "the 80" and was apparently the family home. Title to "the home quarter" is in Clarence Morken. The parties have stipulated as to ownership of the third parcel (the "Norman County land").

After Ole Morken's death, four of the brothers, Clarence, Odd, Norman, and Frithjof, farmed "the home quarter" and "the 80." In 1936 Odd married and left the farm. He gave the other brothers a receipt for "payment in full for my interest in all property belonging to Morken Bros." Norman left in 1938. Clarence and Frithjof continued to farm the land until 1968. "The 80" was rented to neighbors subsequently.

The brothers farmed "the home quarter" and "the 80" as a unit. They appropriated all crops to their own use, paid no rent, and did not share any of the farm income with their cotenants. They exercised exclusive control over the property. Clarence collected the rent after 1968 and did not distribute any to the others. None of the cotenants out of possession ever asserted any claim to the property or income from it. Clarence Morken paid all the taxes. There were no improvements made other than rock clearing. This was done by the brothers in possession incident to planting.

Norman Morken's successors conveyed their interest in "the 80" to Clarence Morken's personal representatives. Bernie Morken conveyed his interest to Frithjof

Morken in 1938. Clarence Morken was the sole devisee under Frithjof's will.

Clarence Morken died in 1979. Respondents, personal representatives of his estate, brought this action to quiet title under Minn.Stat. § 559.01 (1984).

Appellants include Clarence Morken's surviving sister and the successors of the other contenants.

Respondents successfully argued to the trial court that Clarence Morken had obtained title to "the 80" by adverse possession. Appellants appeal from that judgment.

## ISSUE

Was the evidence sufficient to support a finding of hostile possession?

## ANALYSIS

In order to establish title by adverse possession, the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time which, under our statute, is 15 years.

*Ehle v. Prosser*, 293 Minn. 183, 189, 197 N.W.2d 458, 462 (1972). *See* Minn.Stat. § 541.02 (1984).

Appellants concede that respondents have shown actual, open, exclusive, and continuous possession of "the 80" by the brothers in possession. The parties disagree on the element of hostile possession.

[T]he requirement of "hostile" possession does not refer to personal animosity or physical overt acts against the record owner of the property but to the intention of the disseizor to claim exclusive ownership as against the world and to treat the property in dispute in a manner generally associated with the ownership of similar type property in the particular area involved.

*Ehle*, 293 Minn. at 190, 197 N.W.2d at 462 (citations omitted).

When the dispute is between cotenants, however, different principles apply:

Where one tenant in common enters and possesses land, his possession is regarded as possession by all the cotenants, not as disseisin. Thus, there is a presumption that the cotenant holds lands with the implicit permission of the others even if the possessor should maintain the property as his own and keep the profits for himself. In order to overcome this presumption, not only must possession be open and notorious so that the owners may know of it, there must be an express or implicit ouster of them, such ouster consisting of acts or declarations of hostility sufficient to indicate a truly adverse possession and to start the statute of limitations running. An express notice is not necessary; an intention to hold the land adversely to the owners may be derived from all the circumstances of the case, especially the amount and nature of control exercised by the cotenant over the property.

*Adams v. Johnson*, 271 Minn. 439, 442, 136 N.W.2d 78, 81 (1965) (citations and footnote omitted).

The Minnesota Supreme Court upheld a finding of adverse possession in *Adams.* The facts of that case are very similar to these, with two exceptions. First, significant improvements had been made in *Adams.* In addition, the family relationship was very distant.

The court in *Adams* pointed out that the cotenant out of possession never brought a claim respecting the property even though those in possession had occupied the land for nearly 50 years. Referring to the cotenants in possession, the court stated:

They should not now be penalized for failing to make an explicit claim to seemingly uninterested relatives when the obvious interpretation of their actions was that they were using the land for their sole benefit.

*Id.* at 444, 136 N.W.2d at 82.

Similarly, the Morken brothers treated the land as their own for 40 to 50 years. None of the other cotenants objected until Clarence Morken's personal representatives brought this action to quiet title.

We agree with the trial court that the appropriation of crops, rents, and profits, payment of all taxes, and exclusion of the other cotenants from the benefits of ownership for the 37 years from 1928 to 1965 constituted an implicit ouster. This ouster put appellants on notice that the possession from 1965 to 1981 was adverse to their rights of ownership.

### DECISION

Affirmed.