*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1639**

Mark G. Warrington, et al.,
Respondents,

vs.

Donald E. Falk, et al.,
Appellants,

Robert A. Schmaltz, et al.,
Defendants.

**Filed May 18, 2015
Affirmed
Smith, Judge**

Goodhue County District Court
File No. 25-CV-12-2789

Clinton McLagan, Clinton McLagan Attorney at Law, PA, Eagan, Minnesota (for respondents)

Gary A. Van Cleve, Connor T. McNellis, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, Minnesota (for appellants)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's order denying appellants' motion for new and amended findings because the district court did not clearly err in finding that the respondents satisfied the elements of adverse possession.

**FACTS**

In 1974, respondents Mark and Ann Warrington purchased a home at Wacouta Beach. Appellants Donald and Nancy Falk live immediately west of the Warrington property. This dispute focuses on a 60-foot-wide tract of land located to the north of the Falk property, which is designated on the original plat as "Sand Beach." The sand beach and hillside area spans 133 feet to the north of the Falk property and abuts Lake Pepin.

Wacouta Beach was platted in 1920 and included areas dedicated to public use. Although the disputed area was believed to be public land for many years, the sand beach itself was not listed in the plat's dedication clause, thus there was no statutory dedication to the public. In 1929, the owners vacated a public right-of-way that ran east of the disputed area before selling the land.

When the Warringtons moved into their home in 1974, the beach's maintenance was handled primarily by the neighboring residents, rather than the township in which it was located, even though the beach was generally believed to be public. The Warringtons began maintaining the disputed area and using it for recreation. The Warringtons regularly stored equipment on the beach; and, in 1978, they built a moveable dock and used it at the waterfront. In 1991, the township wrote Mark Warrington a letter

2

instructing him not to exercise control or ownership rights over the sand beach because it was public property.

In November 2012, the Warringtons sued, seeking a declaratory judgment that they had adversely possessed the disputed area from 1974 to 1989. The Falks denied that the Warringtons adversely possessed the disputed area and, in the alternative, counterclaimed that they and the previous owner of their home had adversely possessed the disputed area after the Warringtons.

At a district court trial, witnesses testified that, by 2001 when the Falks moved in, the Warringtons had begun using the beach on a neighbor's land and described the disputed area as public. Mark Warrington, however, testified that he continued maintaining and using the disputed area. In March 2013, the heirs of the original platters conveyed title of the disputed area to the Falks. The district court ordered judgment for the Warringtons. The Falks then moved for new and amended findings or a new trial, and the district court denied the motion.

## D E C I S I O N

## I.

The Falks first argue that the district court made impermissible presumptions and inferences in favor of the Warringtons when weighing the evidence. They cite *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003), to support their contention that evidence of adverse possession must be strictly construed without the benefit of any inferences or presumptions. This standard was first articulated in *Vill. of Newport v. Taylor*, 225 Minn. 299, 303, 30 N.W.2d 588, 591 (1948). The year after *Taylor*, the

3

supreme court limited *Taylor*'s holding to its facts, allowing the no-inference rule to be applied "only where the evidence was controlling or where the claimant sought by means thereof to supply a deficiency" in evidence demonstrating actual possession for the statutory period. *Alstad v. Boyer*, 228 Minn. 307, 311, 37 N.W.2d 372, 375 (1949). We apply the standard of clear and convincing evidence, as the district court did, because there was testimony and evidence presented on the Warringtons' actual possession of the disputed area. *See Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn. 1999).

## II.

The Falks next argue that the district court erred by finding Mark Warrington's testimony credible and giving it undue weight. We defer to the credibility determinations of the district court and do not reweigh the evidence. *Alam v. Chowdhury*, 764 N.W.2d 86, 89 (Minn. App. 2009); *see also Rogers*, 603 N.W.2d at 658. "Rather, we look to the record for evidence that could reasonably support the findings of the district court." *Rogers*, 603 N.W.2d at 658. Accordingly, we defer to the district court regarding Mark Warrington's credibility and the weight given to his testimony.

## III.

As a threshold matter, we must determine if the disputed area was public land because an adverse-possession claim cannot be made for public land. *See* Minn Stat. § 541.01 (2014). The Falks argue that the district court erred by finding that the land's original platters vacated a public right-of-way in front of their lot before selling the land. The district court stated that it "did not make any findings that the disputed land was in

any way public land or contained a public roadway" because "there was insufficient proof of public ownership."

The Falks point to the testimony of a land surveyor that he believed the area "was intended . . . to be dedicated as public" and that "[i]t, actually, is a public road" because it was shaded in yellow on the plat. It is not clear whether the surveyor meant that the area is a public road or was clarifying that it was intended as a public road. Later, however, the surveyor conceded that there is nothing on the plat to indicate that the area in yellow shading is public land, nor is there any such convention in surveying. He also testified that the road to which the right-of-way connected was vacated before the land was sold. If he did intend to testify that he believed the disputed area was currently a public right-of-way, he did not explain how he arrived at such an opinion. In addition, while many residents and former residents testified as to whether they believed at the time that the disputed area was public, no other witnesses testified about use of the area as a right-of-way or about a vacation. Wacouta Township was named as a defendant but made no claim to the disputed area. Based on this record, the district court did not clearly err in finding that there was insufficient evidence that the disputed area was public land.

In the alternative, the Falks argue that the disputed area became a public right-of-way through common-law dedication. However, the Falks did not present argument on common-law dedication to the district court. To the contrary, in their responsive posttrial brief, the Falks said, "we will never know if the Township could have made a successful public claim by common law dedication, prescription or some other theory." Because we do not consider issues not presented to and decided by the district court, we will not

5

consider the Falks' common-law dedication argument. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

## IV.

Next, we must determine whether the district court's findings of fact on each element of adverse possession were supported by clear and convincing evidence. Whether the elements of adverse possession have been established is a question of fact, *Ganje*, 659 N.W.2d at 266, which we review for clear error, "view[ing] the evidence in the light most favorable" to the district court's ruling and reversing only if we are "left with the definite and firm conviction that a mistake has been made," *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). To succeed in their claim, the Warringtons must show actual, open, hostile, continuous, and exclusive possession of the disputed area for 15 years. *See id.*

**Actual possession**

The Falks argue that the district court's finding that the Warringtons demonstrated actual possession is clearly erroneous. "The law does not prescribe any particular manner by which an adverse possessor must possess a disputed tract of property." *Ganje*, 659 N.W.2d at 266. An adverse possessor may only claim the area that he occupies, not adjoining land left in its natural state. *Markusen v. Mortensen*, 105 Minn. 10, 14, 116 N.W. 1021, 1023 (1908).

First, the Falks argue that there was no evidence that the Warringtons used the hillside or the area of the land covered in vegetation in front of the hillside. The district court found that the Warringtons actually possessed the entire disputed area because they

6

used the land for "walking, boating, swimming, canoeing, and storing equipment, in addition to time spent clearing and maintaining the beach." While these activities did not take place on the hillside or vegetation-covered area, actual possession only requires that the adverse possessor use the land as an actual owner would, given the purposes to which it is suited. *See Skala v. Lindbeck* 171 Minn. 410, 413, 214 N.W. 271, 272 (1927) (stating that actual possession "depends on the nature and situation of the land and the uses to which it is adapted"). The hillside and vegetation comprise only a small portion of the disputed area that was not suited to any distinctive use. Even so, Mark Warrington testified that he rip-rapped some of the disputed hillside and ran electrical cable in the bank. Considering the nature of the land, the district court did not clearly err in finding that the Warringtons actually possessed the entire disputed area.

Second, the Falks argue that the district court's finding that the disputed area was not appropriate for permanent structures or signage was clearly erroneous because a shed and some signs were on the property. Because no particular method of possession is required, building permanent structures or installing signs are possible, but not necessary, methods of demonstrating actual possession. *See Costello v. Edson*, 44 Minn. 135, 138-39, 46 N.W. 299, 301 (1890). The record indicates that the Warringtons used the disputed area primarily for recreation and did not require permanent structures or signs for that purpose. Their recreational use of the disputed area was consistent with the manner other neighbors used similar, nearby land. Therefore, any error by the district court was harmless because the element of actual possession was satisfied by Mark

7

Warrington's testimony that his family used the disputed area for recreational purposes and equipment storage. *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored).

**Open Possession**

The Falks argue that the district court's finding that the Warringtons demonstrated open possession was erroneous. To satisfy the open-possession requirement, the adverse possessor must demonstrate possession that is "visible from the surroundings, or visible to one seeking to exercise his rights," throughout the statutory period. *Hickerson v. Bender*, 500 N.W.2d 169, 171 (Minn. App. 1993).

The record supports the district court's findings. Had the true owners of the land visited the disputed area, they would have found a beach that was well maintained and showed signs of use. Mark Warrington testified that he and his wife began using and maintaining the beach immediately upon moving into their home in 1974. He testified that, during the adverse-possession period, they cleared and maintained the beach, built fires to burn debris, stored a tractor and moveable dock on the beach, cut trees, and generally used the beach for recreation. The Warringtons also stored boats on the beach and occasionally boat lifts. Although the tractor and the dock are items that could be moved, they are not objects that one would bring for a temporary visit to the beach; therefore, the true owner would be on notice of the Warrington's possession by their presence. In addition, Mark Warrington testified that, when he saw people he did not know on the disputed area, he asked them to leave. Based on Mark Warrington's testimony, the district court's finding of open possession was not clearly erroneous.

8

**Continuous Possession**

The Falks argue that the district court's finding that the Warringtons demonstrated continuous possession was erroneous because the Warringtons used the disputed area only sporadically until placing the dock on the beach in 1978. Occasional and sporadic uses, such as stepping onto a neighbor's lawn while mowing, do not satisfy the continuity requirement. *Stanard v. Urban*, 453 N.W.2d 733, 735-36 (Minn. App. 1990), *review denied* (Minn. June 15, 1990). The Falks argue that *Stanard* is controlling because we held that mowing and maintaining disputed property during summer, storing equipment during winter, and allowing kids to play on the land were occasional and sporadic uses. *Id.* Applying the standard of clear and convincing evidence, the record supports the district court's finding that the Warringtons continuously used at least some part of the disputed area from 1974 to 1989.

While the facts of this case are very similar to *Stanard* because both cases involve a claim of adverse possession based on maintenance, recreational use, and equipment storage on a disputed area, the alleged uses in this case are more extensive. Mark Warrington testified that he and his wife started using and maintaining the beach in 1974 and continued to do so during the entire statutory period. Rather than just regularly mowing the disputed area, Mark Warrington testified that maintenance of the beach area was an extensive task that required building fires to dispose of debris and sometimes plowing the beach under. Furthermore, rather than storing equipment only during the winter, the Warringtons' equipment was on the disputed area year-round. Mark Warrington testified that anyone could see that they were regularly using the disputed

9

area because boats were stored on the beach starting in 1974, the dock was added in 1978, and boat lifts were sometimes present as well. Mark Warrington also testified that, instead of occasionally allowing children to play in the disputed area, his children used the disputed area "every night [in the summer] and in the spring." Therefore, the district court did not clearly err by finding that the Warringtons continuously possessed the disputed area.

**Exclusive Possession**

The Falks argue that the district court's finding that the Warringtons demonstrated exclusive possession was erroneous because neighbors and the public also used the disputed area. Exclusivity requires "possession of the land as if it were [the adverse possessor's] own with the intention of using it to the exclusion of others." *Wheeler v. Newman*, 394 N.W.2d 620, 623 (Minn. App. 1986) (citing *Thomas v. Mrkonich*, 247 Minn. 481, 484, 78 N.W.2d 386, 388 (1956)). Adverse possessors may permit third parties to enter the land, but must exclude anyone who enters under claim of title. *See Ebenhoh v. Hodgman*, 642 N.W.2d 104, 109 (Minn. App. 2002).

The record demonstrates that the Warringtons and their neighbors all used various areas of the beach, sometimes in the disputed area and sometimes not. Mark Warrington testified that he did not object to people he knew using the beachfront in the disputed area, and that it was a common practice between the neighbors to permit each other access to the beach. The Falks emphasize that the disputed area was shared between the previous owners of their home and the Warringtons. However, both the previous owner and Mark Warrington testified that the neighbors generally kept to one side of the dock

while the Warringtons kept to the other.  The previous owner also testified that he never claimed title to the disputed area.  Therefore, the district court's finding of exclusivity was not clearly erroneous based on the occasional presence of neighbors in the disputed area who were not claiming title.

There also was testimony about public use of the area.  Mark Warrington testified that he would ask people he didn't know to leave, and at least one former neighbor corroborated this testimony.  Another former neighbor testified that windsurfers and boaters would park in her driveway and use the beach.  But she did not provide clear testimony on whether the windsurfers accessed the water by crossing the disputed area or by another route.  Therefore, the district court's finding of exclusivity was not clearly erroneous based on testimony about members of the public using the lake.

**Hostile Possession**

The Falks argue that the district court's finding that the Warringtons demonstrated hostile possession was erroneous because the neighbors believed the disputed area was public land and the Warringtons made no express claims of ownership.

> '[H]ostile' possession does not refer to personal animosity or physical overt acts against the record owner of the property but to the intention of the disseizor to claim exclusive ownership as against the world and to treat the property in dispute in a manner generally associated with the ownership of similar type property in the particular area involved.

*Ehle v. Prosser*, 293 Minn. 183, 190, 197 N.W.2d 458, 462 (1972).  In *Ehle*, occasional, minimal uses of the property by record owners did not defeat an adverse possession claim when there was no evidence that those uses were made under claim of ownership.  *Id.*,

11

197 N.W.2d at 462-63. The *Ehle* court also distinguished permissive use of disputed property from uses made "under circumstances from which [the record owner's] knowledge and acquiescence may be inferred," allowing the presumption of hostility. *Id.* at 190-91, 197 N.W.2d at 463 (defining "acquiescence" as "passive conduct" including failure to assert ownership).

The Falks argue that the Warringtons' use of the disputed area was permissive because the previous owner of their home or the township would have objected had the Warringtons made an overt declaration of ownership. But the previous owner testified that he knew the Warringtons treated the property differently than he did, but he never objected. In addition, the previous owner testified that he was aware Mark Warrington "had chased some people off," and an attorney had even advised him that leaving docks and boats on the beachfront would create the appearance of ownership to third parties, which is exactly what the Warringtons did. The township similarly would have seen signs of the Warringtons' possession had a representative visited the beach. The township letter dated July 5, 1991, demonstrated awareness that the Warringtons were performing maintenance on the property and preventing public access, but the township did not object until after the statutory period had passed. Therefore, the district court did not clearly err in finding that the neighbors and the township acquiesced in the Warringtons' possession of the disputed area.

The Falks also argue that adverse possession is defeated if the adverse possessor recognizes the record owner's title and that the Warringtons recognized they did not own the land when they stated it was public land. However, caselaw applies this rule in

situations in which the adverse possessor offered to purchase or lease the disputed area or agreed to the record owner's request to vacate the land during the adverse possession period, not when the adverse possessor makes mere statements about who owns the property. *See, e.g.*, *Mitchell v. Green*, 125 Minn. 24, 28, 145 N.W. 404, 405 (1914) (contract for sale of disputed land); *Cluss v. Hackett*, 127 Minn. 397, 398, 149 N.W. 647, 648 (1914) (negotiations for sale of land); *Stanard*, 453 N.W.2d at 736 (offer to purchase). The Warringtons never made an offer to purchase or lease the disputed area, nor did they agree to vacate during the adverse-possession period. And, even if mere statements were sufficient, there was insufficient evidence for the district court to determine that any of the land was public, therefore it is not clear that the Warringtons' statements recognized the correct record owner's claim. Accordingly, the district court did not clearly err in finding that the elements of adverse possession were met, despite the Warringtons' subsequent statements.

## V.

The Falks next argue that the district court erred because it did not consider evidence they presented of conduct after 1989.[1] The supreme court has held that title by

---

[1] The Falks also argue that the district court erred by excluding statements made by the Warringtons that the disputed area was public and should be shared by the neighbors. The statements were made during a meeting between the Warringtons, the Warringtons' attorney, and the Falks. The district court held that the statements were irrelevant and akin to settlement negotiations. *See* Minn. R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is . . . not admissible."). Any error in excluding the statements was also harmless because the statements were needlessly duplicative. *See* Minn. R. Evid. 403. The district court admitted evidence that Mark Warrington began treating the land as public after receiving a letter from the township in

adverse possession accrues at the end of the statutory period and that such title can only be divested by operation of law, such as through a sale or subsequent adverse possession by another. *Todd v. Weed*, 84 Minn. 4, 6, 86 N.W. 756, 756-57 (1901). After an adverse possessor acquires title, the adverse possessor's actions or statements inconsistent with ownership are not sufficient to defeat his claim. *See id.* at 6-7, 86 N.W. at 757 ("[I]f the evidence on the subject of adverse possession be conclusive, title acquired thereby could not be devested by subsequent verbal declarations and admissions."). The Falks correctly point out that, in *Todd*, the supreme court found subsequent conduct to be relevant and probative of the adverse possessor's state of mind. *See id.* at 6-7, 86 N.W. at 756-57. But intent to take the land as one's own is not currently a required element of adverse possession, only intent to exclude others from the land. *Compare id.* at 6, 86 N.W. at 757 (holding that subsequent conduct is "proper evidence, as bearing upon and as tending to characterize . . . purpose and intent") *with Ganje*, 659 N.W.2d at 266 ("Intent to take the land is not necessary; an individual can gain title by adverse possession even though the disseizor does not intend to take land not belonging to him so long as he does intend to exclude all others." (quotation omitted)).

Finally, the Falks argue that the evidence was probative of their adverse-possession counterclaim. The district court found that the Falks had not possessed the disputed area for the statutory period because they purchased their property in 2001. But, an adverse possessor may tack on a prior occupant's possession, if they are in privity.

---

1991. In addition, Mark Warrington admitted that he called the disputed area a public beach at various times.

14

*Ebenhoh*, 642 N.W.2d at 109. The district court's memorandum demonstrates that it did consider the post-1989 statements in connection with the Falks' adverse-possession counterclaim. However, given the limited amount of evidence presented regarding any adverse possession by the prior owners of the Falk home, we cannot say that the district court clearly erred in finding that the Falks did not satisfy their burden of demonstrating adverse possession for the statutory period.

**Affirmed.**