*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1090**

Paul M. Dobis, et al.,
Respondents,

vs.

David L. Scegura,
Trustee of the David L. Scegura Trust,
Appellant,

David Catlin,
Appellant,

Patricia Ann Catlin,
Appellant.

**Filed January 30, 2017
Affirmed in part, reversed in part, and remanded.
Reilly, Judge**

Stearns County District Court
File No. 73-CV-14-2476

Robert H. Wenner, Anthony E. Toepher, Reichert Wenner, P.A., St. Cloud, Minnesota (for respondents)

Stuart T. Alger, Patrick B. Steinhoff, Malkerson Gunn Martin LLP, Minneapolis, Minnesota (for appellants)

Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and

Reilly, Judge.

**REILLY**, Judge

Appellants challenge the district court's findings that respondents proved, by clear and convincing evidence, that their predecessors-in-interest had actual, open, continuous, exclusive, and hostile possession of the disputed area for at least the statutory 15-year period to establish adverse possession. Because we determine that clear and convincing evidence establishes that respondents adversely possessed the disputed area for the statutory 15-year period, and because we are unable to determine the exact location of the recognized boundary, we affirm in part, reverse in part, and remand to the district court with instructions for additional findings.

## FACTS

This boundary dispute can be traced back to Valentine Kociemba, the sole owner of a parcel of land in Holding Township, Minnesota. In 1968, Valentine divided his land into three parcels and conveyed one parcel to each of his three sons. He conveyed the 30 acres in the northwest to his son Mark Kociemba, the 19.5 acres in the east to his son Steve Kociemba, and the 20.5 acres in the southwest to his son Alois Kociemba.[1] Mark's parcel was to the north of, and contiguous to, the parcel owned by Alois; and both Mark and Alois owned land to the west of, and contiguous to, the parcel owned by Steve. This land was bordered on the north by a public road, 390th Street, and was accessible by the northern frontage road. A private driveway was later installed along the southern border. The north-

---

[1] Because this case involves family members with the same last name of Kociemba, the opinion will refer to each member by their first name.

2

south boundary between the parcels conveyed to Alois and Mark and the parcel conveyed to Steve is the subject of this dispute.

Aerial photographs from 1968 to 2010 demonstrate that the north-south boundary recognized by the brothers extended beyond the north-south survey boundary, which ran from the northern access road to the eastern side of the southern private driveway. Survey measurements revealed a 55-foot variation between the recognized boundary and survey boundary on the northern end, and a 26-foot variation between the recognized boundary and survey boundary on the southern end. The area between the survey boundary and recognized boundary is the subject of this dispute. It contained a grass strip and measured 1,301.42 feet in length, 26 feet in width on the northern end, 54.28 feet in width on the southern end, and approximately 52,650 square feet, or 1.2 acres.

After Valentine conveyed the property to his sons, they conveyed their parcels to the parties involved in this dispute. Mark farmed his property from 1968 to 1991, when he sold the parcel to James Scegura, who later transferred the parcel to his brother David Scegura. This parcel is currently owned by the David L. Scegura Trust. In 1994, Alois conveyed his 20.5-acre parcel to his daughter and son-in-law, Patricia and David Catlin. The Catlins built a house on the southeast portion of the parcel, but reserved the remaining acreage for agricultural production. Alois continued to farm the tillable portion of the parcel until 1997, when the Catlins rented the agricultural portion to Paul Dobis. Paul formed a partnership with his brother Leroy Dobis, and the partnership farmed the land until 2005, when the Catlins refused to re-let the land to the partnership. Steve and his wife Louise farmed their 19.5-acre parcel from 1968 to the late 1990s; the couple then leased

3

the parcel to the Dobis partnership. When Steve died in 2010, Louise sold the parcel to Paul and his wife Rebecca (respondents), who then leased the parcel to the Dobis partnership.

In 2013, respondents initiated this action to quiet title to the disputed area, arguing that they had actual, open, continuous, exclusive, and hostile possession of the disputed area for at least the statutory 15-year period. Aerial photographs of the parcels introduced at trial showed that the brothers and their successors-in-interest relied on an occupational boundary line that differed from the survey line. The district court found that this distinction was first observable in the 1965 aerial photograph. The testimony also established that Steve and Louise farmed beyond the survey boundary and up to the recognized boundary from 1968 to 2010, even though the couple did not consider the area to be their property and did not have permission to do so. There was other testimony that Mark and Steve recognized a separate boundary based on a fence north of 390th Street that was "slightly to the west" of the recognized boundary introduced at trial. The Catlins also testified that respondents "slowly crept closer" to the parcels owned by the Catlins and the Scegura Trust, tilling westward from 2010 to 2013 until portions of the disputed area "disappeared."

After weighing this evidence, the district court judge discredited the testimony of Mark and the Catlins. Relying instead on the aerial photographs, the district court concluded that

> [a]though the width of the grass strip may have changed over
> the years, the aerial photographs submitted into evidence make
> clear that the boundary line used from 1965 to 2010 ran from

4

the access road to 390 at the north of the property to just east of the driveway at the south of the property, after the driveway was built.

The district court therefore concluded that (1) respondents proved by, clear and convincing evidence, that Steve and Louise had actual, open, exclusive, continuous and hostile possession of the disputed area from 1968 to 2010 and that (2) respondents acquired title to the property by adverse possession.

This appeal follows.

## D E C I S I O N

Whether a claimant establishes the elements of adverse possession is a question of fact, *Ganje v. Schuler*, 659 N.W.2d 261, 266 (Minn. App. 2003), and this court will not set aside factual findings unless the findings are "clearly erroneous," Minn. R. Civ. P. 52.01. When reviewing a district court's factual findings, this court gives "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. But this court construes evidence presented in support of adverse possession strictly, "without resort to any inference or presumption in favor of the disseizor, but with the indulgence of every presumption against him." *Ebenhoh v. Hodgman*, 642 N.W.2d 104, 108 (Minn. App. 2002) (quotation omitted). "[W]hether the findings of fact support a district court's conclusions of law and judgment is a question of law, which we review de novo." *Ganje*, 659 N.W.2d at 266 (quotation omitted).

In Minnesota, the elements of proof necessary to establish ownership by means of adverse possession are well established. *Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn. 1999). In *Ehle v. Prosser*, the Minnesota Supreme Court held:

5

> In order to establish title by adverse possession, the disseizor must show, by clear and convincing evidence, an actual, open, hostile, continuous, and exclusive possession for the requisite period of time which, under our statute, is 15 years. Subjective intent to take land adversely is not essential in this state and title by adverse possession may be obtained even though the disseizor does not intend to take land not belonging to him so long as he does intend to exclude all others.

293 Minn. 183, 189, 197 N.W.2d 458, 462 (1972).

## I.    Actual Possession

The threshold issue here is whether respondents had actual possession of the disputed area.  The Catlins and David Scegura, as trustee of the David L. Scegura Trust, (appellants) argue that because the district court's factual findings in regards to the northern and southern boundary markers are clearly erroneous, respondents failed to establish actual possession of the disputed area by clear and convincing evidence.[2]

While "actual" possession requires that an adverse possessor occupy the land and apply it "to the uses for which it is fit," *Mellenthin v. Brantman*, 211 Minn. 336, 341, 1 N.W.2d 141, 143 (1941), the law does not require an adverse possessor to obtain possession of a disputed tract of property by any particular manner, *Ganje*, 659 N.W.2d at 266 (quotation omitted).  Rather, "possession must give unequivocal notice to the true owner that someone is in possession in hostility to his title." *Id.* (quotation omitted).

---

[2] Appellants also argue that the district court's amended findings, excluding the driveway owned by the Catlins from the southern landmark, render its findings clearly erroneous. We disagree.  After reviewing the record, it is apparent that the parties recognized a boundary that differed from the survey boundary and that, as a result, Steve and Louise acquired actual possession of the disputed area.

6

The district court considered aerial photographs from 1965 to 2010 and testimony from the Catlins, Mark, Louise, and the land surveyor. After weighing the evidence introduced at trial, the district court assigned more credibility to the testimony of Louise and the surveyor, than Mark. Accordingly, the district court concluded that the evidence presented at trial clearly shows that Steve and Louise occupied the land, openly tilled the land, and planted corn, which gave notice to Steve's siblings of his hostile possession. Because the evidence presented supports this finding, the district court did not err.

Nevertheless, appellants argue that the district court's factual findings are clearly erroneous because (1) respondents failed to establish that they themselves actually possessed the land and (2) Mark's testimony supports an alternative finding—that the recognized boundary lies slightly to the east of the fence north of 390th Street. But these arguments are unpersuasive. The district court found, and the evidence clearly supports the finding, that respondents' predecessors-in-interest actually possessed the disputed area. Because it is well-established that "continuous" possession is not required to maintain adverse possession once the disseizor of the property has acquired title by adverse possession, *see Fredericksen v. Henke*, 167 Minn. 356, 361, 209 N.W. 257, 259 (Minn. 1926), respondents subsequent possession has no impact on the district court's findings. Moreover, we give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," Minn. R. Civ. P. 52.01, and will not reverse on clear error simply because evidence exists to support an alternative conclusion, *see Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000) ("That the record might support findings other than those made by the [district] court does not show that the court's findings

are defective."). The evidence supports the district court's finding that respondents' predecessors-in-interest had actual possession of the disputed area from 1968 until they sold the property to respondents in 2010. We therefore conclude that the district court's findings are not clearly erroneous.

## II. Open possession

Appellants next argue that respondents did not have open possession of the disputed area. "Open" possession requires that possession is "visible from the surroundings, or visible to one seeking to exercise his rights." *Hickerson v. Bender*, 500 N.W.2d 169, 171 (Minn. App. 1993). Appellants conceded below that "all parties have been 'open' with their occupation of their parcels of property." The district court therefore concluded that "all parties agree that the possession of the dispute[d] parcel was open." Generally, "litigants are bound [on appeal] by the theory or theories, however erroneous or improvident, upon which the action was actually tried below." *Annis v. Annis*, 250 Minn. 256, 262-63, 84 N.W.2d 256, 261 (1957). Thus, this issue is not properly before the court.[3]

## III. Exclusivity

Appellants next argue that respondents failed to establish exclusive possession of the land over the 15-year period because respondents occupied the disputed area only by "incrementally 'creeping' further westward each year" from 2010 to 2013. This argument is also unpersuasive.

---

[3] Even if this issue was properly before the court, appellants' argument fails. After reviewing the record, it is apparent that Steve and Louise had open possession of the land. Steve overtly tilled the disputed area and planted crops; his possession was visible to those seeking to enforce their rights.

8

To satisfy the exclusivity requirement of adverse possession, the disseizor must possess the land "as if it were his own with the intention of using it to the exclusion of others." *Ganje*, 659 N.W.2d at 267 (quotation omitted).

The district court determined that respondents' predecessors-in-interest satisfied the exclusivity requirement; this finding is clearly supported by the evidence presented at trial. The evidence establishes that Steve and Louise took possession of the disputed area and farmed the land to the exclusion of Steve's brothers and their successors-in-interest. Aerial photographs from 1968 to 2010 show that the north-south boundary recognized by the brothers extended beyond the north-south survey boundary, and the district court found that "[t]estimony and aerial photographs show that the parties clearly honored a boundary line markedly different from the survey line for a time far longer than the fifteen year statutory period." Moreover, we agree with the district court that "the lack of testimony as to the exact coordinates of the line during this period does not negate the clear and convincing evidence that the parties recognized a boundary line identified by the two relevant landmarks, and does not defeat the adverse possession claim."

Accordingly, Steve and Louise had exclusive possession of the disputed area by adverse possession before selling the parcel to respondents, and this title passed to respondents with the sale of the parcel. Thus, respondents' subsequent use of the property from 2010 to 2013 does not impact the district court's factual findings and legal conclusions.

## IV.    Continuous

Appellants similarly argue that respondents failed to maintain continuous possession because they slowly encroached on the grass strip from 2010 to 2013.  To acquire title to a disputed area of land, the adverse possessor must continuously use the land for a period of 15 years before bringing an adverse possession claim.  *See* Minn. Stat. § 541.02 (2014).  If the adverse possession is interrupted during the 15-year period, possession of the property reverts to the original holder of the title.  *Ganje*, 659 N.W.2d at 268.  But "the possession of successive occupants, if there is privity between them, may be tacked to make adverse possession for the requisite period."  *Ebenhoh*, 642 N.W.2d at 109 (quoting *Fredericksen*, 167 Minn. at 360, 209 N.W. at 259).

The district court found that respondents' predecessors-in-interest continuously and exclusively possessed the disputed area for a period of 15 years, and the record supports this conclusion.  Steve and Louise exclusively farmed the disputed area from 1965 to 2010—their exclusive and continuous possession of the disputed area was well beyond the requisite 15-year period.  In 2010, Louise sold the property to respondents, and their partnership farmed the land without interruption until 2013.  Steve and Louise therefore perfected title well before selling the parcel to respondents in 2010.

Appellants' argument that respondents failed to continuously possess the property from 2010 to 2013 is unavailing.  As aforementioned, "continuous" possession is not required to maintain adverse possession once the disseizor of the property has acquired title by adverse possession.  *See Fredericksen*, 167 Minn. at 361, 209 N.W. at 259.  Thus, respondents' continued possession was not necessary to maintain possession, and their use

10

of the disputed area after their predecessors-in-interest does not impact this adverse possession claim.

## V. Hostility

Finally, appellants argue that respondents failed to establish that their predecessors' use of the property was hostile. For possession to be hostile, the disseizor must "enter and take possession of the lands as if they were his own . . . with the intention of holding [it] for himself to the exclusion of all others." *Ebenhoh*, 642 N.W.2d at 110 (quotation omitted). The term "hostility" under adverse possession claims does not require "personal animosity or physical overt acts against the record owner." *Id.* (quoting *Ehle*, 293 Minn. at 190, 197 N.W.2d. at 462). Rather, hostility requires possession and ownership to the exclusion of others, and hostility is "flexibly determined by examining the character of the possession and the acts of ownership of the occupant." *Id.* at 110-11 (quotation omitted).

Generally, adverse or hostile intent may be inferred "by examining the character of the possession and the acts of ownership." *Id.* (quotation omitted). But this inference is tempered when a close family relationship exists between the alleged disseizor and the record owner. *See id.* In these instances,

> the existence of a close family relationship between the claimant of land and the record owner . . . create[s] the inference, if not the presumption, that the original possession by the claimant of the other's land was permissive and not adverse and that when such use was thus permissive it would be presumed to continue as permissive, rather than hostile, until the contrary was affirmatively shown.

11

*Norgong v. Whitehead*, 225 Minn. 379, 383, 31 N.W.2d 267, 269 (1948); *see also Wojahn v. Johnson*, 297 N.W.2d 298, 306 (Minn. 1980) (noting that this standard applies to adverse property disputes between siblings).

Applying this standard, the district court found that (1) all three of the brothers respected "what they believed to be the property line," (2) Steve and Louise had the exclusive right to control and possess all of the property east of the boundary, (3) Steve and Louise considered all property east of the occupation boundary to be theirs, (4) neither Mark nor Alois gave Steve and Louise permission to farm east of the occupational boundary, and (5) neither brother challenged Steve and Louise's use of the property. The district court's findings are not clearly erroneous. Steve and Louise had open, actual, continuous, and exclusive use of the property from 1965 to 2010. During this time, they farmed up to the recognized boundary. They entered the disputed area and took possession of the property as if they were the actual owners, with the intention of holding the tract out to the exclusion of others. In essence, their possession was hostile in the sense that Steve and Louise entered the disputed area and took possession with the intention of excluding Steve's brothers.

The district court's factual finding that respondents proved, by clear and convincing evidence, acquisition of title to a portion of appellant's property by adverse possession, is supported by the record and therefore not clearly erroneous.[4] However, it is unclear from

[4] Appellants further argue that, contrary to Minnesota law, the district court drew improper inferences in favor of respondents based on the aerial photographs admitted at trial. *See Ebenhoh v. Hodgman*, 642 N.W.2d 104, 108 (Minn. App. 2002) ("Evidence tending to establish adverse possession must be strictly construed, without resort to any interference

12

the district court's findings whether the area adversely possessed included respondents' westward creep from 2010 to 2013. Because we cannot determine the exact location of the recognized boundary based on the record submitted on appeal, we remand to the district court with instructions for the court to determine the precise location of the boundary recognized by Steve and Louise and the boundary recognized by respondents. If the district court concludes that the boundary recognized by respondents extends beyond the boundary recognized by Steve and Louise, the district court must limit the adverse possession claim to the portion of the disputed property adversely possessed by Steve and Louise. Any property beyond the portion possessed by Steve and Louise lawfully belongs to appellants. On remand, the district court may, if necessary, reopen the record and conduct a further evidentiary hearing.

**Affirmed in part, reversed in part, and remanded.**

---

or presumption in favor of the disseizor, but with the indulgence of every presumption against him."). We disagree. The district court's findings are clearly supported by the testimony of Louise and the land surveyor, and the district court did not draw improper inferences based on aerial photographs.