**In the Matter of the EXCAVATION OF ERICKSON LAKE (BELTRAMI COUNTY) by Fred and Marie LAHMAN.**

**No. C2-86-269.**

Court of Appeals of Minnesota.

Aug. 26, 1986.

Thomas T. Smith, Bemidji, for relators.

Hubert H. Humphrey, III, Atty. Gen., A.W. Clapp, III, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered, and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

LESLIE, Judge.

Relators petitioned the Commissioner of Natural Resources to obtain an after-the-fact permit to excavate in Erickson Lake. The commissioner refused to grant the permit unless relators agreed to restrict the use of their land. If relators refused to restrict the use of their land, the commissioner ordered them to fill in a fifty-foot strip of a channel they dug. We affirm.

## FACTS

Relators, Fred and Marie Lahman, own about 200 acres of land along Lake Erickson in Beltrami County. The lake covers a little more than 100 acres and has changed little since it was originally surveyed in 1874. The lake is between five and ten feet at its deepest points. Much of the lake was floating bog, and it was a freeze-out lake, meaning it did not have enough oxygen to keep fish alive during some winters.

The Lahmans moved onto their property in 1963. Mr. Lahman, a well digger, decided to develop the land and water to support wildlife. He approached the Department of Natural Resources and asked them to help develop the land, but they refused because the lake had no public access.

Mr. Lahman then proceeded to develop the area himself. In 1973 he apparently

dredged a small watercourse that runs through his property. Sometime in the late 1970's he aerated the northeast portion of the lake in an attempt to improve the fish population. Mr. Lahman also reinforced some beaver dams, increasing the water level by about two feet. In 1979 Mr. Lahman employed a contractor to dredge a channel sixty feet wide, five feet deep, and running approximately 800 feet from the shoreline. This channel connected with the small watercourse, making a "T" shaped watercourse running about 800 feet from the lake.

The DNR brought misdemeanor charges against Mr. Lahman for altering a public body of water without a permit. After a two day jury trial in 1981, the jury found Mr. Lahman guilty. He appealed to a three judge district court panel which affirmed his conviction. The supreme court declined to review the case. Mr. Lahman was never fined or imprisoned for the offense, and two years after the verdict, the trial judge closed the file with "no sentence."

DNR personnel then began negotiations with the Lahmans concerning the 800 foot channel. They seemed to agree that the DNR would not require the Lahmans to fill the channel if they agreed to restrict any subdivision of the property so that no property not bordering on the lake would border on the channel. When relators failed to sign the agreement, the DNR issued a restoration order compelling them to plug the channel by filling in a fifty-foot long section of the channel. The Lahmans appealed that order.

While all of this occurred, various administrative actions took place to inventory Erickson Lake. A 1973 Beltrami County Ordinance did not list Erickson Lake as a public water, apparently because the DNR erroneously assumed the lake was not within the jurisdiction of the public waters program. When Minn.Stat. § 105.391 was amended in 1979, the DNR discovered its oversight regarding Erickson Lake and recommended Beltrami County classify the lake as a public water. The county held

hearings, and at Mr. Lahman's urging they dropped Erickson Lake from the list of lakes designated as public waters, recommending the DNR drop the lake from its public waters list. In March, 1983, the commissioner rejected the county's recommendation and published notice that anyone wishing to contest the designation of Erickson Lake as a public water could petition to appear at a hearing. Mr. Lahman did not appear to contest the designation. No one contested the designation, so Erickson Lake is now officially classified as a public water.

On July 25, 1985, a public hearing was held to determine what to do with the channel. The administrative law judge found that Erickson Lake is a public water and that relators excavated without a permit. He found relators did not meet their burden of showing they should be granted an unrestricted permit for the excavation. He recommended the commissioner grant a permit conditioned on relators granting a restrictive covenant that they would not subdivide their property so more than one dwelling could use the channel. If relators failed to grant the covenant, the ALJ recommended denying a permit and requiring relators to fill the southeast fifty feet of the channel. The commissioner adopted the ALJ's findings and recommendations, adding, however, that among the DNR's major concerns in this situation is the possibility of extending riparian rights to nonriparian lands. This appeal follows.

### ISSUES

1. Did the commissioner err in refusing to grant relators an unrestricted permit for their excavation?

2. Did the commissioner err in ordering relators to fill a fifty foot part of the channel or grant a restrictive covenant?

### ANALYSIS

Minn Stat. § 105.42, subd. 1 (1984) states in part

It shall be unlawful for * * * any person * * * to change or diminish the course,

current or cross-section of any public waters * * * by any means, * * * without a written permit from the commissioner previously obtained.

Relators clearly changed or diminished the course, current or cross-section of Lake Erickson. Although relators initially argued otherwise, Lake Erickson is clearly a public water. *See* Fisher, *Minnesota Water Management Law and Section 404 Permits: A Practitioner's Perspective*, 7 Hamline L.Rev. 249, 259–63 (1984).

■ Relators contend the state should be estopped from claiming the lake is a public water. They first argue that years ago, when they asked the DNR to assist them in their wildlife development project, the DNR refused to do so because the lake was a private lake. This is inaccurate, however, as Mr. Lahman actually testified the DNR would not spend any money on the lake because there was no public access. A lake clearly can be public water without having any public access to it.

Relators next argue the state should be estopped because they relied on the most current listing of public waters contained in Beltrami County's Shoreland Management Ordinance. Because this ordinance did not list Lake Erickson as a public water, relators argue, the commissioner should be estopped from claiming the lake is a public water. They cite no cases or rules to support this argument and we believe the county's list is not enough to estop the commissioner from claiming the lake is a public water.

■ Relators further argue we must vacate the commissioner's refusal to issue an unrestricted permit because the commissioner failed to show the public was harmed by relator's actions. They contend the evidence actually shows their efforts have helped keep the lake clean and full of fish and wildlife. They point to the ALJ's memorandum which noted the DNR conceded relators' actions have improved the quality of the lake. Relators argue the only possible harmful action, the development of a marina on the channel, is not

being planned and that even if it were, the DNR failed to show how a marina would injure the public.

Relators incorrectly analyze the permit law. Minn.Stat. § 105.45 (1984), which governs issuance of permits, states that permits shall be granted if the commissioner determines "the plans of the applicant are reasonable, practical, and will adequately protect public safety and promote the public welfare." The state does not have the burden of proving the public will be harmed by relator's action. Minn.Stat. § 105.45 specifically states "the applicant has the burden of proving that the proposed project is reasonable, practical, and will adequately protect public safety and promote the public welfare." Although relators proved their activities have improved the lake, they did not alleviate concerns that a marina might be built or that riparian rights would be extended to nonriparian land owners. *See* Minn. Rules § 6115.0200, subp. 3B (1985). Given the commissioner's expertise in the area, we will not say the commissioner erred in determining relator's plan did not adequately protect the public welfare.

■ 2. Relators also argue the commissioner exceeded his authority by forcing them to take actions on their own land. Essentially, relators argue that while the commissioner has power to correct alterations in a public water, he could not order relators to restrict the development of their private property or fill the already completed dredging on their own property. They feel their rights to their private property are superior to the commissioner's right to correct alterations in the public water.

We disagree. Minn.Stat. § 105.461 (1984) grants the commissioner authority as follows:

... the commissioner may order the applicant to take any action necessary to restore the public waters or beds thereof to the condition existing before unlawful activities, if any, were undertaken by the applicant. This restoration may include, but not be limited to, filling beds unlawfully dredged, removing fill unlawfully

placed, or restoring water unlawfully appropriated.

This statute is very broad and allows the commissioner to order the person to take *any action* necessary to restore the waters. There is no indication that the commissioner's power ends at the landowner's border. Although relators contend that none of the examples in Minn.Stat. § 105.-461 suggest the commissioner has authority over private land, the statute specifically states the commissioner's power is not limited to the examples given. To interpret this provision as relators wish would mean the commissioner is powerless any time a person completes his illegal act on his private property. This would encourage an owner to complete their activities and present the completed project to the commissioner, with the commissioner powerless to do anything to remedy the illegal activities.

### DECISION

The commissioner did not err in refusing to grant an unrestricted permit or in ordering relators to fill fifty feet of channel on their property.

Affirmed.