Warren BLOOMQUIST, Relator,

v.

COMMISSIONER OF NATURAL
RESOURCES, Respondent.

No. A05–147.

Court of Appeals of Minnesota.

Sept. 27, 2005.

William G. Peterson, Peterson Law Office, P.A., Bloomington, MN, for relator.

Mike Hatch, Attorney General, David P. Iverson, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; LANSING, Judge; and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

In an administrative proceeding, the commissioner of natural resources denied Warren Bloomquist's application for a permit to excavate a channel extending from Whitefish Lake to a pond located on his property in Crow Wing County. By writ of certiorari Bloomquist appeals, asserting that the denial is arbitrary and capricious

and based on errors of law. We conclude substantial evidence supports the commissioner's determination that the permit would violate public water resource rules by extending riparian rights to nonriparian owners and by promoting the development of nonriparian land. We also conclude the decision is not arbitrary and capricious because the commissioner provided a rational explanation that establishes a logical connection between the factual findings and the legal conclusions. We affirm.

## FACTS

Warren Bloomquist owns thirty acres of land on Whitefish Lake in Crow Wing County. The property contains a natural pond measuring approximately one and one-half acres that is about twenty feet from Whitefish Lake. Bloomquist has, at the base of a set of stairs, a dock that provides direct access to Whitefish Lake. Bloomquist and adjoining landowners also had access to the lake from 1961 until 1991 through an artificial channel that connected the pond to the lake.

Bloomquist acquired his property in 1961. The same year Frank Schram, a neighboring property owner, applied for and received a permit from the Minnesota Department of Natural Resources (DNR) authorizing the excavation and maintenance of the artificial channel between the pond and the lake. In 1976 Schram obtained a permit to reopen the channel by removing accumulated sediment, and Schram's estate obtained a permit to excavate and maintain the channel at the entrance to the pond in 1983. John and Suzanne Breen purchased the Schram property in 1986, and, in response to their permit application, the DNR transferred the second maintenance permit to the Breens and authorized additional maintenance. After 1991 the channel again filled with sediment and has not been used since that time.

A 2003 survey showed that the channel was not located on the Schram–Breen property, but was in fact on Bloomquist's property. Before the survey was completed, Bloomquist signed a purchase agreement for the sale of his land to Northern Lakes Company. Northern Lakes entered into the agreement with the intent to develop the property, and its obligation to complete the purchase was contingent on obtaining the necessary permits to subdivide the property and to reopen the channel to permit boat traffic into the pond. Northern Lakes estimated that the channel would significantly increase the value of Bloomquist's property.

In February 2003 Northern Lakes applied for an excavation permit to reopen the channel. The DNR conducted field investigations but dismissed Northern Lakes' application because Northern Lakes did not have a property interest in Bloomquist's land. The letter advising Northern Lakes of the dismissal also indicated that, unless the law required issuance of the permit, the DNR would not allow the excavation because of the negative environmental impact, the lack of justification for protected boat mooring, the availability of alternative access to Whitefish Lake, and the time elapsed since the channel was last used for navigation.

Bloomquist then applied for a permit to "remove blockage in [the] channel to allow boat traffic." In July 2003 the DNR sent Bloomquist a letter that formally denied his permit application. The denial restated the reasons listed in the earlier letter with more specificity and also stated that, because the channel was completely filled in with large shrubs and other vegetation, the DNR considered the application to be for new excavation rather than maintenance.

Bloomquist requested a hearing on the denial of his permit application, and an administrative law judge (ALJ) conducted a contested-case hearing. The ALJ made detailed findings on the history of the channel and on the reports and testimony of technicians, hydrologists, and a limnologist. The ALJ concluded the proposed project reasonably required a new permit rather than maintenance authorization, Bloomquist had not established he had vested riparian rights that could be asserted against the state, Bloomquist had demonstrated that the excavation would likely not be detrimental to significant fish and wildlife habitat or protected vegetation, and Bloomquist had shown that the proposed project was reasonable, practical, and would adequately promote the public welfare. Based on these findings, the ALJ recommended the DNR grant the excavation permit.

The commissioner adopted the majority of the ALJ's factual findings and legal conclusions but denied the permit. The commissioner based the denial on three grounds: (1) the prohibition against "excavation intended to extend riparian rights to nonriparian lands or to promote the subdivision and development of nonriparian lands"; (2) the failure of the project to "conform to state, regional, and local water and related land resource management plans" and to comply with applicable shoreland ordinances; and (3) Bloomquist's alternative access to Whitefish Lake that "would result in less environmental impact."

In this certiorari appeal, Bloomquist contends that the commissioner's determination was based on errors of law because it failed to take into account his vested riparian rights and did not provide legally sufficient grounds for the denial. He also argues that the decision was arbitrary and capricious because it fails to provide ade-quate reasons for rejecting the ALJ's recommendation, treats similarly situated property differently, and does not address the permit's effect on the natural habitat.

## ISSUES

I.  Did the commissioner err by denying the permit on legally insufficient reasons?

II. Was the commissioner's decision arbitrary and capricious?

## ANALYSIS

We may reverse or modify an agency's decision only if it is in violation of a constitutional provision, in excess of the agency's statutory authority or jurisdiction, made upon unlawful procedure, affected by other error of law, unsupported by substantial evidence, or arbitrary and capricious. Minn.Stat. § 14.69 (2004). The decision of an agency is presumed to be correct, and we ordinarily accord deference to an agency in its field of expertise. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

### I

Bloomquist's primary contention is that the commissioner's bases for denying the permit are not legally sufficient. Within the framework of appellate authority to modify or reverse, we interpret this contention as a claim that the commissioner's determination is unsupported by substantial evidence or relies on an error of law.

Bloomquist first challenges the commissioner's determination that he did not have vested riparian rights in the channel connecting the pond to Whitefish Lake. Riparian rights are the rights to reasonably use the surface of waters abutting a parcel of real property. *Johnson v. Seifert,* 257 Minn. 159, 168–69, 100 N.W.2d 689, 696–97 (1960). A person does not own

the water; rather, a person who owns a lakeshore or lakebed has the riparian right to use and enjoy the water. *Pratt v. State, Dep't of Natural Res.*, 309 N.W.2d 767, 772 (Minn.1981). "Riparian rights are subordinate to the rights of the public and subject to reasonable control and regulation by the state." *State v. Kuluvar*, 266 Minn. 408, 418, 123 N.W.2d 699, 706 (1963).

Bloomquist claims he has prescriptive riparian rights to use the channel. A party may acquire a right by prescription if the claimant can prove open, continuous, actual, hostile, and exclusive use for a period of fifteen years. *Heuer v. County of Aitkin*, 645 N.W.2d 753, 759 (Minn.App. 2002); *see also* Minn.Stat. § 541.02 (setting statutory period at fifteen years). Although use may presumptively be hostile or adverse, this presumption is rebutted by evidence that the use was permissive. *Ehle v. Prosser*, 293 Minn. 183, 190–91, 197 N.W.2d 458, 463 (1972). Permissive use generates no prescriptive rights, and, if the use was permissive at inception, it must become adverse with the owner's knowledge before any prescriptive rights can arise. *Id.* at 191, 197 N.W.2d at 463.

The facts and the law do not support Bloomquist's claim of prescriptive riparian rights. First, his use of the channel, since inception, was permissive. The 1961 permit stated that it was "permissive," that it did not confer any "property rights either in real estate or material, or any exclusive privileges," and that it authorized Schram to maintain the channel subject to DNR approval. The 1983 permit also authorized Schram's estate to excavate and maintain the channel and contained the same permissive language as the 1961 permit. Consequently, Bloomquist's use was never hostile or adverse and he acquired no prescriptive rights, riparian or otherwise, in the channel.

Second, Bloomquist cannot acquire rights in public property by prescription, and the channel, when it existed, was part of a public waterway. *See* Minn.Stat. § 541.01 (2004) ("[N]o occupant of a public way, levee, square, or other ground dedicated or appropriated to public use shall acquire, by reason of occupancy, any title thereto."); *Heuer*, 645 N.W.2d at 757 (applying prohibition against acquiring title to public land by adverse possession to acquiring use of public land by prescriptive easement). The 1961 permit states that any "extension of [Whitefish Lake] resulting from work authorized by this permit shall become public waters and left open and unobstructed for use by the public."

Bloomquist next challenges each of the commissioner's reasons for denying the permit, arguing that they were based on errors of law and unsupported by substantial evidence. The DNR limits the excavation of materials from the beds and shorelines of public waters to preserve their natural state, to ensure compatibility with the water's capabilities, to assimilate the excavation, and to protect the public waters from adverse effects. Minn. R. 6115.0200, subp. 1 (2003). The DNR limits the nature, degree, and purpose of excavations. *Id.* Its applicable rule expressly prohibits certain types of excavation, and its enumerated list includes two prohibitions that formed the basis for the denial of Bloomquist's permit. *Id.*, subp. 3 (2003). First, excavation is prohibited when the "excavation is intended to extend riparian rights to nonriparian lands, or to promote the subdivision and development of nonriparian lands." *Id.*, subp. 3(B). Second, the DNR may not grant an excavation permit when access to the water "can be reasonably attained by alternative means which would result in less environmental impact." *Id.*, subp. 3(A).

The commissioner first determined that the DNR may not issue the permit because the excavation was "intended to extend riparian rights to nonriparian lands, or to promote the subdivision and development of nonriparian lands." This determination is supported by the record. Bloomquist seeks the permit for development of his property, and this development could create subdivided plots that are adjacent to the pond. The effect of establishing a channel between the pond and Whitefish Lake would be to extend the surface of the lake to enable future owners of subdivided plots, who would otherwise have no riparian rights to the lake, to acquire them. Although the development is prospective, the DNR nonetheless has the authority to deny an excavation permit when the evidence demonstrates that the excavation is for the purpose of a proposed development or impermissible extension of rights. *See In re Excavation of Erickson Lake*, 392 N.W.2d 636, 638–39 (Minn.App.1986) (sustaining permit denial in light of owner's refusal to agree not to subdivide his land because of possible extension of riparian rights to nonriparian lands). The motivation behind Bloomquist's permit application was to effectuate the transfer of his land to Northern Lakes for development purposes, and the potential increase in his property value from the proposed excavation suggests that additional plots will acquire access and rights to the lake.

The commissioner also rejected the permit application because of its failure to conform to "state, regional and local water and related land resource management plans" and the inconsistency with applicable "shoreland . . . management standards and ordinances for the waters involved." The record supports these conclusions. The evidence shows that the excavation of the channel would violate a Crow Wing County ordinance against removing a sediment ridge and that Bloomquist needed a variance from the county to proceed with the project. This county ordinance, entitled "Dirt Removal in Shore Land Areas," appears to be part of both local water and related land-resource management plans and a shoreland management standard or ordinance. Although this reason alone might not be a sufficient basis to deny the permit, Bloomquist has offered no evidence that he has a variance or that a variance is obtainable. Therefore, the commissioner did not err by concluding that the excavation is prohibited because of conflicts with applicable local management plans and ordinances.

The commissioner's third basis for denying the permit is Bloomquist's existing access to Whitefish Lake. The determination of accessibility is a factual question, and we will not substitute our judgment for that of the administrative body when a factual finding is properly supported by the evidence. *See Vicker v. Starkey*, 265 Minn. 464, 470, 122 N.W.2d 169, 173 (1963) (refusing to disturb commissioner's determination "merely because the court does not agree"). An agency's factual findings are properly supported by the evidence when the record contains "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Soo Line R.R. v. Minn. Dep't of Transp.*, 304 N.W.2d 301, 306 (Minn.1981) (quotation omitted).

The record shows that Bloomquist currently has access to the lake through an existing dock situated on the lake. This dock has been used as his exclusive means of obtaining access to Whitefish Lake since the channel silted in. Bloomquist contends that he cannot reasonably use this access because his age precludes making the necessary descent down the steep embankment. The commissioner found, however, that the dock is mostly used by Bloomquist's children and that the ac-

knowledged purpose for the channel excavation is for development, not because Bloomquist and his wife are getting older. Additionally, the commissioner determined that Bloomquist failed to meet his burden of showing that the proposed excavation would affect the environment less than the existing access. The evidence reasonably supports these determinations.

## II

Bloomquist secondarily contends that the commissioner acted arbitrarily and capriciously by (1) rejecting the ALJ's report without explanation, (2) treating similarly situated properties differently, and (3) denying the permit without making a finding that it would be detrimental to significant fish and wildlife habitat.

An agency's decision is arbitrary and capricious if it is an exercise of the agency's will, rather than its judgment, *Markwardt v. State, Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn.1977), or if the decision is based on a whim, or is devoid of articulated reason. *Mammenga v. State, Dept. of Human Servs.*, 442 N.W.2d 786, 789 (Minn.1989). When the record leaves room for two opinions on the matter, an agency's decision is not arbitrary and capricious. *In re Friedenson*, 574 N.W.2d 463, 467 (Minn.App.1998), *review denied* (Minn. Apr. 30, 1998). And conclusions are not arbitrary and capricious as long as a rational connection exists between the facts found and the choice made. *In re Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn.2001); *see also In re Am. Freight Sys. Inc.*, 380 N.W.2d 192, 196 (Minn.App.1986) (holding that agency did not act in arbitrary and capricious manner by adopting ALJ's factual findings but not its conclusions when agency explained its reasoning).

■ Although an agency is not bound by the findings, conclusions, and recommendations of the ALJ, the agency should not take lightly the ALJ's findings. *In re Orr*, 396 N.W.2d 657, 662 (Minn.App.1986). Failure to explain on the record reasons for deviating from the ALJ's findings can be evidence of an arbitrary and capricious decision. *Id.; see also* Minn.Stat. § 14.62, subd. 1 (2004) (stating that decision or order that rejects or modifies finding of fact, conclusion, or recommendation contained in ALJ's report must include reason for each rejection or modification).

■ The commissioner adopted almost all of the ALJ's factual findings, and each of the modifications and additions were supported by references to the record. The commissioner also produced a five-page memorandum, explaining the deviations from the ALJ's report and articulating a rational connection between the factual findings and legal conclusions. This careful consideration precludes a determination that the commissioner acted in an arbitrary and capricious manner.

■ Bloomquist also argues that the commissioner treated similarly situated properties differently by granting a permit to Driftwood Resorts to excavate a channel connecting a bay to Whitefish Lake. But an agency need not rigidly adhere to precedent, and, when evidence in the record differs from previous cases, results may differ as well. *In re Northern States Power Gas Utility*, 519 N.W.2d 921, 925 (Minn.App.1994). Bloomquist's property and Driftwood Resorts are not similarly situated for two reasons. First, the excavation permit granted to Driftwood Resorts was to reconnect a natural bay of Whitefish Lake. Bloomquist's pond, by contrast, was never a natural part of the lake. Second, and significantly, Driftwood Resorts was already developed, and thus the permit could not result in the exten-

sion of riparian rights to undeveloped non-riparian lands.

 Finally, Bloomquist challenges the commissioner's rejection, without explanation, of the ALJ's conclusion that the excavation would not be "detrimental to significant fish and wildlife habitat." This finding, however, is not necessary for denial of a permit application because it is only one factor among multiple factors that prohibits issuance of a permit. *See* Minn. R. 6115.0200, subp. 3 (listing factors that prohibit issuance of excavation permit). The commissioner provided a detailed explanation of the existence of three limiting factors. It is not necessary to address every reason that would weigh against granting the permit.

## DECISION

The commissioner properly concluded that the permit applicant has no vested riparian rights to the channel. Substantial evidence supports the commissioner's conclusion that the permit would impermissibly extend riparian rights to nonriparian lands and is intended for the purpose of development. Additionally, substantial evidence supports the commissioner's conclusion that the excavation would violate local requirements and that the applicant has alternative access to the lake. The denial of the permit application was not arbitrary and capricious because the commissioner's order incorporated reasoned fact-finding and the conclusions were supported by the record and applicable legal authority. Because the commissioner correctly applied the law and relied on substantial evidence in the record, we affirm.

**Affirmed.**