**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1948**

Jeremy McNitt,
Relator,

vs.

Minnesota IT Services (MNIT),
Respondent.

**Filed October 28, 2024
Reversed and remanded
Slieter, Judge**

Minnesota Department of Information Technology Services

Cassandra C. Wolfgram, Matthew J. Schaap, Dougherty, Molenda, Solfest, Hills & Bauer P.A., Apple Valley, Minnesota (for relator)

Keith Ellison, Attorney General, Peter J. Farrell, Deputy Solicitor General, Amanda Prutzman, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Slieter, Presiding Judge; Wheelock, Judge; and Kirk, Judge.[*]

**SYLLABUS**

1.     When an administrative-law judge recommends granting summary disposition in a contested case, the administrative-law judge's report and recommendation does not constitute the final decision of the agency under Minn. Stat. § 14.62 (2022) if the agency timely orders a remand and expressly accepts, modifies, or rejects each of the administrative-law judge's findings, conclusions, and recommendations in the same order.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2.      When an applicant for public employment who has a prior conviction directly relating to the position for which they have applied provides "competent evidence of sufficient rehabilitation and present fitness," as identified in Minn. Stat. § 364.03, subd. 3(a) (2022), the hiring authority does not have discretion to disqualify the applicant from employment in the position sought based on the conviction.

## OPINION

**SLIETER**, Judge

In this certiorari appeal, relator Jeremy McNitt challenges respondent Minnesota IT Services' (MNIT) order that disqualified McNitt from employment based on a criminal conviction. McNitt asserts that the administrative-law judge's (ALJ) report and recommendation to rescind the disqualification determination became the final decision because, prior to issuing its final order, the commissioner ordered a remand to the ALJ for a contested-case hearing. Alternatively, McNitt asserts that MNIT legally erred when it issued its final order by determining that he is disqualified from public employment because he is not sufficiently rehabilitated pursuant to Minn. Stat. § 364.03, subd. 3(a). We reject McNitt's argument that the ALJ's report and recommendation became the final decision. But because MNIT misapplied Minn. Stat. § 364.03, subd. 3(a), when it issued the final order, we reverse and remand.

2

**FACTS**

The following facts are not in dispute. In late 2021, MNIT posted a web-developer job opening with the Minnesota Department of Education.[1] McNitt applied for the job in January 2022, and MNIT subsequently offered him the position subject to a background check. McNitt's background check revealed a 2017 conviction for possessing child pornography in 2011. Before determining whether this prior conviction disqualified McNitt from the position, MNIT was required by Minnesota Statutes section 364.03 (2022) to first determine whether the conviction was directly related to the position McNitt sought. MNIT determined that McNitt's prior conviction directly related to the position sought and asked McNitt for evidence of rehabilitation and present fitness for employment. Later that month, McNitt provided documentation that he had completed the terms of his sentence, been discharged from probation, and remained law abiding. In March 2022, MNIT issued a notice of disqualification, informing McNitt that he had not shown that he had been sufficiently rehabilitated to preclude the disqualification.

McNitt administratively appealed MNIT's disqualification determination pursuant to the Minnesota Administrative Procedure Act (MAPA), Minn. Stat. §§ 14.001-.69 (2022), and the parties filed cross-motions for summary disposition. An ALJ conducted a hearing on the motions. On February 10, 2023, the ALJ issued a report and recommendation determining that McNitt's conviction of possessing child pornography directly related to the position for which he applied and, therefore, disqualified him from

---

[1] MNIT is responsible for hiring information-technology employees for certain state agencies, including the Minnesota Department of Education.

employment unless he provided competent evidence of sufficient rehabilitation and present fitness. The ALJ found that McNitt had provided sufficient evidence of rehabilitation and recommended that MNIT (1) determine that McNitt made the required statutory showing of rehabilitation, (2) remove any record disqualifying McNitt from employment, and (3) provide McNitt with a position of identical responsibility and pay to the position that he had been contingently offered.

On June 21, 2023, the commissioner of MNIT issued findings of fact, conclusions of law, and an order that rejected the ALJ's recommendation to grant McNitt's motion for summary disposition. The commissioner, therefore, remanded for an evidentiary hearing.[2] The commissioner adopted some of the ALJ's fact findings and modified others and rejected the ALJ's determination that there were no genuine issues of material fact. The commissioner remanded to the ALJ for a contested-case hearing as to whether McNitt proved that "MNIT abused its discretion when it disqualified him from employment" and determined that he was disqualified from public employment for ten years.

At the end of October, following the release of *In re Surveillance & Integrity Review (SIRS)*, 996 N.W.2d 178, 187 (Minn. 2023) by the Minnesota Supreme Court, the ALJ determined that he no longer had jurisdiction to conduct a contested-case hearing on remand, and returned the file to MNIT. In November, the commissioner issued MNIT's final order affirming its earlier determination, that McNitt "failed to establish sufficient

---

[2] We refer to the commissioner when discussing the agency's order disqualifying McNitt from employment. We refer to MNIT when discussing the events prior to McNitt's administrative appeal and the agency's arguments on appeal before this court.

4

rehabilitation and present fitness to perform the duties he seeks to perform at the [d]epartment of [e]ducation," and its decision to disqualify McNitt from public employment based upon his prior conviction. The order also prohibits McNitt from reapplying for public employment until January 2027.[3] The commissioner, therefore, dismissed McNitt's administrative appeal.

McNitt appeals by writ of certiorari.

## ISSUES

I.    Did the ALJ's report and recommendation become the final decision?

II.    When an applicant makes the showing required by Minnesota Statutes section 364.03, subdivision 3(a), does a public employer have discretion to determine whether an applicant has demonstrated rehabilitation?

## ANALYSIS

"Decisions by administrative agencies enjoy a presumption of correctness," and the party challenging an agency decision "has the burden of proof when appealing an agency decision." *In re Excelsior Energy, Inc.*, 782 N.W.2d 282, 289 (Minn. App. 2010); *see also City of Moorhead v. Minn. Pub. Utils. Comm'n*, 343 N.W.2d 843, 849 (Minn. 1984). On appeal

> th[is] court may affirm the decision of the agency or remand
> the case for further proceedings; or it may reverse or modify
> the decision if the substantial rights of the petitioners may have

---

[3] The commissioner cited no authority for such a blanket prohibition, and we have found none. Minn. Stat. § 364.01-.10 (2022). Instead, an applicant with a prior conviction may be disqualified from a particular position only once the public employer determines the crime of conviction is directly related to the job sought.

5

been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or
> (c) made upon unlawful procedure; or
> (d) affected by other error of law; or
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
> (f) arbitrary or capricious.

Minn. Stat. § 14.69. McNitt makes two alternative arguments on appeal. First, he claims that, under the supreme court's decision in *SIRS* and Minnesota Statutes section 14.62, the ALJ's report and recommendation became the final decision because the commissioner's June order involved a remand to the ALJ. Second, McNitt argues that the commissioner erred by determining that he failed to prove that he had been sufficiently rehabilitated despite his submission of the documents identified in Minnesota Statutes section 364.03, subdivision 3(a). We address each argument in turn.

## I.     The ALJ's report and recommendation did not become the final decision.

McNitt argues that the ALJ's recommendation is the final decision in this case because MNIT's remand of the matter to the ALJ was not a proper rejection of the ALJ's recommendation. We are not persuaded.

Minnesota Statutes section 14.62, subdivision 2(a), provides that "the report or order of the administrative law judge constitutes the final decision in the case unless the agency modifies or rejects it . . . within 90 days after the record of the proceeding closes." Thus, the agency has "three options after receiving the ALJ's report with recommendation: to

6

accept the ALJ's report as the agency's final decision; to 'modif[y]' the ALJ's report; or to 'reject' the ALJ's report." *SIRS*, 996 N.W.2d at 187.

As we explained, each party argued for summary disposition before the ALJ. It is well established under Minnesota administrative law and practice that "summary disposition is the administrative equivalent of summary judgment." *Pietsch v. Minn. Bd. of Chiropractic Exam'rs*, 683 N.W.2d 303, 306 (Minn. 2004). An ALJ is tasked with making a recommendation on a motion for summary disposition. Minn. R. 1400.5500 (2023).

Here, the agency, via the commissioner's first order, rejected the ALJ's recommendation for summary disposition and remanded for further proceedings, much as an appellate court would do if it reversed a grant of summary judgment and remanded to the district court for further proceedings. In arguing that the ALJ's recommendation following summary disposition became the final decision in this matter, McNitt relies on *SIRS*.

In *SIRS*, the Minnesota Supreme Court addressed whether the Minnesota Department of Human Services (DHS) exceeded its authority under section 14.62 by remanding a case to an ALJ. 996 N.W.2d at 180. In 2019, DHS terminated a provider of nursing services, personal-care-assistant services, and homemaking services for noncompliance with program requirements. *Id.* at 181. The contested case proceeded to a three-day evidentiary hearing before an ALJ pursuant to MAPA. *Id.* at 182. The ALJ issued a report and recommendation, determining that termination from the program was an inappropriate sanction. *Id.* On the deadline to accept, reject, or modify the ALJ's

7

recommendation, DHS remanded the matter to the ALJ to reweigh and reconsider evidence. *Id.* at 183-84. DHS did not modify or reject the ALJ's recommendation in its order remanding the matter to the ALJ. *Id.* The provider appealed, claiming that the ALJ's report and recommendation became the final decision when DHS issued a remand, which is not authorized by statute. The supreme court agreed, holding that "[t]he Department of Human Services does not have the authority to remand a case to an administrative law judge under Minn. Stat. § 14.62 (2022), or under any other source of implied authority, after the administrative law judge issues a final recommendation." *Id.* at 179.

MNIT claims that this matter is distinguishable from *SIRS*. We agree.

In *SIRS*, the commissioner remanded the matter back to the ALJ for reconsideration following a contested-case hearing. *Id.* at 183-84. Here, the matter proceeded based upon the parties' motions for summary disposition. *See Pietsch*, 683 N.W.2d at 306 (equating summary disposition to summary judgment and noting that review is limited to determining whether there are genuine issues of material fact and whether there was an error in applying the law). Furthermore, the June order addresses all the ALJ's findings and conclusions by either accepting, modifying, or rejecting each of the findings. The order also accepts or rejects each of the ALJ's conclusions of law. Critically, the June order adopts the ALJ's recommendation to deny MNIT's summary-disposition motion, and it rejects the ALJ's recommendation to grant McNitt's summary-disposition motion.

The commissioner also produced a six-page memorandum, which is attached to its June order, explaining that MNIT rejected the ALJ's recommendation to grant McNitt summary disposition based upon MNIT's determination that it retains sole discretion to

8

determine whether an applicant has been rehabilitated. *See* Minn. Stat. § 14.62, subd. 1 ("A decision or order that rejects or modifies a finding of fact, conclusion, or recommendation . . . must include the reasons for each rejection or modification."); *Bloomquist v. Comm'r of Nat. Res.*, 704 N.W.2d 184, 190 (Minn. App. 2005) (concluding that a five-page memorandum explaining the reasons for deviating from an ALJ's recommendation satisfied the justification requirement of Minn. Stat. § 14.62, subd. 1).

The remand orders at issue in *SIRS* and this matter also differ. In *SIRS*, the commissioner remanded to the ALJ to reconsider and reweigh evidence following a three-day evidentiary hearing. 996 N.W.2d at 183. Here, the commissioner determined that there are contested-fact issues such that summary disposition was not appropriate and, therefore, remanded the matter for an evidentiary hearing.

The record closed on March 31, 2023. The commissioner issued its decision rejecting the ALJ's recommendation on June 21, within the 90-day timeframe. Thus, unlike in *SIRS*, the commissioner here timely modified and rejected the ALJ's report and recommendation in its order remanding the matter to the ALJ.

In summary, when an administrative-law judge recommends granting summary disposition in a contested case, an ALJ's report and recommendation does not constitute the final decision of the agency under section 14.62 if the agency timely accepts, modifies, or rejects each of the ALJ's findings, conclusions, and recommendations and orders a remand in the same order.

We, therefore, reject McNitt's argument that the ALJ's recommendation is the final decision, and we next review the November 2023 order—MNIT's final order.[4]

## II. When an applicant makes the showing required by Minnesota Statutes section 364.03, subdivision 3(a), public employers may not disqualify the applicant from the public employment sought.

The Minnesota criminal offender rehabilitation act (CORA), Minn. Stat. §§ 364.01-.10, provides that, "it is the policy of the state of Minnesota to encourage and contribute to the rehabilitation of criminal offenders and to assist them in the resumption of the responsibilities of citizenship." Minn. Stat. § 364.01. Recognizing that "[t]he opportunity to secure employment . . . is essential to rehabilitation and the resumption of the responsibilities of citizenship," CORA sets forth standards and procedures to be followed when criminal offenders seek public employment. *Id.*

An applicant may be disqualified from public employment if they have a prior "convict[ion] directly relate[d] to the position of employment sought."[5] Minn. Stat. § 364.03, subd. 1. However, "[a] person who has been convicted of a crime or crimes which directly relate to the public employment sought . . . shall not be disqualified from the employment or occupation if the person can show competent evidence of sufficient rehabilitation and present fitness to perform the duties." *Id.*, subd. 3(a).

---

[4] We need not reach the issue of whether the ALJ appropriately returned the file to MNIT following the *SIRS* decision because MNIT subsequently issued its final decision.

[5] Although McNitt states that he disagrees with the determination that his criminal conviction directly relates to the position he sought, he does not challenge that determination on appeal.

It is important to note at the outset the phrase "sufficient rehabilitation *and* present fitness to perform the duties." *Id.* (emphasis added). This phrase could be reasonably read in two ways. It could be read to require the person seeking public employment to demonstrate separately the presence of each—"sufficient rehabilitation" and "present fitness"—such that, even if an applicant satisfied the first requirement, the public employer would retain discretion to determine whether the applicant is presently fit for the duties of the job. Alternatively, it could be read, relying on the conjunctive phrase "and," to be a single requirement to present evidence that shows that the applicant has demonstrated "sufficient rehabilitation" which necessarily also means the applicant has shown "present fitness to perform the duties."

There is support for the second interpretation in other phrases used within subdivision 3. In the sentence following the quoted language above, the statute reads that competent "evidence of *sufficient rehabilitation* may be established by . . . ." No reference here is made to "present fitness." And, subdivision 3(c) contains a statement about when a department of defense form ceases to be evidence of "sufficient rehabilitation," again without referencing "present fitness."

But we need not resolve whether present fitness is an independent requirement of CORA because both parties, in their arguments to this court, implicitly adopted the second interpretation. Importantly, MNIT's main argument is that "[s]ubdivisions 3(a) and (b) set forth items for the public employer to consider in determining whether an applicant has shown *sufficient rehabilitation* . . . ." MNIT does not argue that the "present fitness" language imposes a requirement separate from the "rehabilitation requirement." Nor does

11

it argue that McNitt is not presently fit for the position to which he applied. We therefore assume without deciding that the statute imposes a single requirement, of sufficient rehabilitation, and we turn to addressing the scope of that requirement.

CORA identifies how an applicant shows that they have been "sufficient[ly] rehabilitat[ed]." Minn. Stat. § 364.03, subd. 3(a).

> (a) . . . Competent evidence of sufficient rehabilitation may be established by the production of . . .
>> (1) a copy of the local, state, or federal release order; and
>> (2) evidence showing that at least one year has elapsed since release from any local, state, or federal correctional institution without subsequent conviction of a crime; and evidence showing compliance with all terms and conditions of probation or parole; or
>> (3) a copy of the relevant Department of Corrections discharge order or other documents showing completion of probation or parole supervision.
>
> (b) In addition to the documentary evidence presented, the licensing or hiring authority shall consider any evidence presented by the applicant regarding:
>> (1) the nature and seriousness of the crime or crimes for which convicted;
>> (2) all circumstances relative to the crime or crimes, including mitigating circumstances or social conditions surrounding the commission of the crime or crimes;
>> (3) the age of the person at the time the crime or crimes were committed;
>> (4) the length of time elapsed since the crime or crimes were committed; and
>> (5) all other competent evidence of rehabilitation and present fitness presented, including, but not limited to, letters of reference by persons who have been in contact with the applicant since the applicant's release from any local, state, or federal correctional institution.
>
> (c) The certified copy of a person's United States Department of Defense form DD-214 showing the person's honorable

discharge or separation under honorable conditions from the United States armed forces ceases to qualify as competent evidence of sufficient rehabilitation for purposes of this section upon the person's conviction for any gross misdemeanor or felony committed by the person subsequent to the effective date of that honorable discharge or separation from military service.

*Id.*, subd. 3(a)-(c).

Statutory interpretation is a question of law that appellate courts review *de novo*. *In re NorthMet Project Permit to Mine Application*, 959 N.W.2d 731, 744 (Minn. 2021). When interpreting statutes, we seek "to ascertain and effectuate the intention of the legislature." *A.A.A. v. Minn. Dep't of Hum. Servs.*, 832 N.W.2d 816, 819 (Minn. 2013). We begin by determining whether the language is clear and unambiguous. *Id.* If the statute is clear and unambiguous, we apply the statute's plain meaning. If the statute is ambiguous and susceptible to more than one interpretation, we may look beyond the language to determine the legislative intent. *Id.* We refer to the "plain and ordinary meaning" of words and phrases in statute. *Emerson v. Sch. Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 682 (Minn. 2012). But "we are not bound by dictionary definitions when context directs us otherwise." *State v. Gibson*, 945 N.W.2d 855, 858 (Minn. 2020). And we consider the "statute as a whole so as to harmonize and give effect to all its parts." *In re Restorff*, 932 N.W.2d 12, 19 (Minn. 2019).

McNitt challenges MNIT's interpretation of CORA. He maintains that the statute is unambiguous and argues that, when an applicant makes the statutory showing in subdivision 3(a), public employers do not have discretion to determine whether a criminal offender has been rehabilitated such that they qualify for public employment. MNIT

argues that the statute "unambiguously" grants discretion to the public employer to consider an applicant as disqualified even after the applicant has submitted the documents identified by CORA. We agree with the parties that the statute is unambiguous.

Applicants with prior convictions "shall not" be disqualified from public employment if they can show that they have been rehabilitated. Minn. Stat. § 364.03, subd. 3(a). "Shall not" means that the prohibition against disqualifying applicants from public employment once the applicant has shown competent evidence of sufficient rehabilitation is mandatory, not permissive. *See* Minn. Stat. § 645.44, subd. 16 (2022) ("'Shall' is mandatory."). Thus, when an applicant for public employment makes the required showing, the public hiring authority cannot disqualify an applicant from employment because of the prior conviction.

CORA states that a criminal offender "*shall not be disqualified* from the employment or occupation *if the person can show* competent evidence of sufficient rehabilitation and present fitness to perform the duties of the public employment sought." Minn. Stat. § 364.03, subd. 3(a) (emphasis added). "Competent evidence of sufficient rehabilitation may be established by" providing certain military documents, or:

> (1) a copy of the local, state, or federal release order; and
> (2) evidence showing that at least one year has elapsed since release from any local, state, or federal correctional institution without subsequent conviction of a crime; and evidence showing compliance with all terms and conditions of probation or parole; or
> (3) a copy of the relevant Department of Corrections discharge order or other documents showing completion of probation or parole supervision.

*Id.*, subd. 3(a)(1)-(3). The applicant may show sufficient rehabilitation by providing a set of the documents identified in subdivision 3(a)(1)-(2) or by a discharge order as provided by subdivision 3(a)(3). We agree with MNIT that the hiring authority must ensure that the required materials are actually provided and credible.[6] But once an applicant provides the documentation listed in subdivision 3(a), the applicant has satisfied the statutorily defined means of demonstrating rehabilitation and shall not be disqualified from employment.

MNIT argues that CORA unambiguously grants it discretion to determine whether an applicant with a prior conviction has been rehabilitated such that they are not disqualified from employment even once they have provided the documents identified in subdivision 3(a). Our plain reading of the statute, as we have already explained, instructs us otherwise.

There is no language in subdivision 3(a) that confers upon the public employer discretion to determine that an applicant, who has presented the documents of rehabilitation listed in subdivision 3(a), is not rehabilitated. MNIT's interpretation of the statute would require us to add words, which we cannot do. *See Christiansen v. Bd. of Regents*, 733 N.W.2d 156, 159 (Minn. App. 2007) (noting that "this court cannot add to a statute what the legislature has either purposefully omitted or inadvertently overlooked"), *rev. denied* (Minn. Aug. 21, 2007).

---

[6] We note that the documents outlined in subdivision 3(a) are government-issued documents which demonstrate that an offender has completed the terms of their criminal sentence.

And to the extent that discretion is authorized, it pertains only to subdivision 3(b). First, it provides that "[i]n addition to the documentary evidence presented, the . . . hiring authority shall consider" additional information identified in the statute if provided by the applicant. However, as we have explained, when an applicant provides the subdivision 3(a) documents, he has established sufficient rehabilitation. If an applicant cannot provide the documentation identified in subdivision 3(a), they may provide the documents identified in subdivision 3(b) and the agency can determine whether the applicant has demonstrated sufficient rehabilitation. Here, McNitt provided the documents identified in subdivision 3(a), demonstrating sufficient rehabilitation. And although he also provided documents identified in subdivision 3(b), the additional documents were unnecessary because he had already established sufficient rehabilitation by providing the subdivision 3(a) documents.

Additionally, the legislature knew the words to use when it wished to grant such authority based upon the language it used in Minnesota Statutes section 364.03, subdivision 2. Subdivision 2 states that public employers "shall consider" several factors in determining whether a conviction directly relates to the position sought. This language clearly grants the hiring authority discretion to weigh the factors and decide whether the prior conviction is directly related to the position sought. Subdivision 3(a) does not include this or similar language. And we assume, as we must, that the omission of similar language from subdivision 3(a) was intentional. *Id.*; *see also Wallace v. Comm'n of Tax'n*, 184 N.W.2d 588, 594 (Minn. 1971) (noting that the legislature grants discretion, but commissioners do not have "authority to determine what the law shall be or to supply a

16

substantive provision of the law which he thinks the legislature should have included in the first place").

Still, MNIT identifies specific terms used in the statute that, it purports, "unambiguously" demonstrate that the legislature provided public employers with discretion to determine whether an applicant has shown rehabilitation. We are not persuaded.

MNIT claims that the use of the phrase "sufficient rehabilitation . . . to perform the duties of the public employment sought" necessarily means that the employer has discretion to determine, even after the documents listed in subdivision 3(a) have been provided, whether "sufficient" rehabilitation has occurred. However, as we have explained, subdivision 3(a) tells public employers what evidence shows that an applicant has been sufficiently rehabilitated, which is the evidence McNitt provided here. Once that evidence has been provided, CORA provides no further discretion to the employer to determine the applicant is not qualified.

Finally, MNIT suggests that "[c]ommon sense dictates that each person's conviction will be different" and that these "myriad of facts . . . indicate that a public employer must have discretion to determine sufficient rehabilitation." First, as we have already explained, the legislature specifically provided in subdivision 3(a) the items that an applicant must submit to show rehabilitation. Additionally, certain occupations and criminal offenses are excepted from CORA. *See* Minn. Stat. § 364.09 (excepting, for example, "juvenile corrections employment, where the offense involved child physical or sexual abuse or criminal sexual conduct"). In other words, applicants for such positions or with the

17

excepted criminal convictions, are not afforded the benefits of CORA. Information-technology positions, like the web-developer position McNitt sought, are not among the excepted occupations. *Id.* And possession of child pornography is not identified as a disqualifying offense regardless of rehabilitation. *Id.*; *see also Martinco v. Hastings*, 122 N.W.2d 631, 638 (Minn. 1963) ("If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposefully omits or inadvertently overlooks."). Allowing public employers to determine whether an applicant has been rehabilitated after the applicant made the statutory showing is contrary to the unambiguous language and policy of CORA.

Because there was no evidentiary hearing before the ALJ, it is not clear what additional issues remain unaddressed as part of McNitt's administrative appeal. We are aware that the ALJ did not address McNitt's claim for damages and attorney fees. Further, though our decision means that McNitt is no longer disqualified from public employment due to his conviction, we are not aware of whether the job he was contingently offered, or a similar job, is currently available. Therefore, a remand for further proceedings is appropriate.

**DECISION**

When an applicant for public employment with a prior conviction directly relating to the position for which they have applied provides "competent evidence of rehabilitation and present fitness," as identified in Minnesota Statutes section 364.03, subdivision 3(a), the hiring authority does not have discretion to disqualify the applicant from the position sought based on the conviction. Because it is undisputed that McNitt provided the

18

documents outlined under subdivision 3(a), we reverse the November order dismissing McNitt's claim and remand for further proceedings.

**Reversed and remanded.**